**ALLEGHANY CORPORATION, Plaintiff-Appellee,**

v.

**Allan P. KIRBY, Charles T. Ireland, Jr., and Fred M. Kirby, Defendants-Appellees,**

**Randolph Phillips, Defendant,**

**Margaret L. Holt and Kathleen L. McMahon, Applicants-Appellants.**

**No. 490, Docket 29652.**

United States Court of Appeals
Second Circuit.

Argued April 19, 1965.

Decided April 21, 1965.

Certiorari Granted June 1, 1965.
See 85 S.Ct. 1772.

Hays, Circuit Judge, dissented.

Stuart N. Updike, of Townley, Updike, Carter & Rodgers, New York City (J. Howard Carter, Lee W. Meyer, Ronald S. Daniels, Richard J. Barnes, New York City, on the brief), for applicants-appellants.

Mark F. Hughes, of Willkie, Farr, Gallagher, Walton & FitzGibbon, New York City (Vincent R. FitzPatrick, New York City, on the brief), for plaintiff-appellee.

Walter R. Mansfield, of Donovan, Leisure, Newton & Irvine, New York City (John E. Tobin, New York City, on the brief), for defendants-appellees.

Before KAUFMAN, HAYS and ANDERSON, Circuit Judges.

KAUFMAN, Circuit Judge:

As Judge Friendly recently wrote, "The affairs of Alleghany Corporation, from its founding by the Van Sweringen brothers in 1929, have given rise to a flood of litigation that must be unparalleled in American corporation law." Willheim v. Murchison, 342 F.2d 33 (2 Cir. Feb. 10, 1965). The aspect of that litigious history presently before us—which may occupy no more than a footnote when the definitive chronicle is written—involves an appeal by Margaret L. Holt and Kathleen L. McMahon ("the applicants"), as owners of 650 and 550 shares, respectively, of Alleghany preferred stock, from an order of the District Court denying them leave to intervene as a matter of right, pursuant to Fed.R.Civ.P. 24(a) (2), in a chapter of the history which recently occupied this Court's attention for more than a year. Alleghany Corp. v. Kirby, 2 Cir., 333 F.2d 327 (1964), aff'd by equally divided Court en banc, 2 Cir., 340 F.2d 311 (1965). Intervention is sought at this last-minute stage of proceedings that trace back to 1954 in order to petition derivatively, on behalf of the Corporation, for a writ of certiorari from the Supreme Court to review the judgment dismissing Alleghany's complaint in an action to set aside the settlement of an earlier stockholders' derivative action. The District Court denied the application, finding and concluding, with reference to the explicit language of Rule 24(a) (2), that it was untimely and that the applicants "have had and do have adequate representation." We affirm.

Because the complex factual basis of the underlying litigation was fully delineated in this Court's earlier opinions, 333 F.2d 327, it suffices to set out in skeletal chronological form the facts relevant to this appeal. The basic action, in which the applicants seek to intervene, began in September 1960 as a stockholders' derivative suit brought by John D. Murchison, Clint W. Murchison, Jr., and Gerard L. Fossland (hereafter, together with affiliates, "the Murchison group") against the Corporation, Allan P. Kirby and others ("the Kirby group"). On June 26, 1962, after the Murchison group had, by shareholder vote, wrested control of the Board of Directors from the Kirby management, the late Judge Dawson approved the substitution of the Corporation as plaintiff and the dropping of the prior shareholder plaintiffs. On May 20, 1963, Judge Dawson dismissed the complaint, D.C., 218 F. Supp. 164, and the Murchison Board of Directors thereafter authorized the applicants' counsel in this action, who had represented first the Murchison group and thereafter the Corporation, to appeal to this Court. On December 4, 1963, two days after a regular panel of this Court heard oral argument of the appeal, the seesaw game betwen Murchison and Kirby continued and the Kirby group regained control of the Corporation. The appeal, of course, continued and after we affirmed the judgment dismissing the complaint, one judge dissenting, on May 20, 1964, the Board of Directors, including defendant Kirby, voted unanimously to authorize a petition for rehearing en banc. The petition having been granted and the Court having announced on January 12, 1965, that it was evenly divided, the judgment below was accordingly affirmed.

The Alleghany Board of Directors thereafter consulted both the law firm that had represented the Corporation before this Court and now appears for the applicants, and other independent counsel who now appear for the Corporation in this phase of the litigation, concerning the advisability of petitioning the Supreme Court for a writ of certiorari and the responsibility of the Board towards the Corporation's shareholders in making that decision. On February 9, 1965, the alleged independent Board members—interested defendants Allan P. Kirby, Charles T. Ireland, Jr., and Fred M. Kirby having absented themselves from the meeting and one director abstaining for personal reasons—voted unanimously not to authorize a petition for a writ of certiorari. The papers filed

with Chief Judge Ryan on the instant belated application for intervention reveal that the independent directors, in reaching that decision, considered not only the relatively modest cost of an application for certiorari, but also the consequences to the Corporation if the writ were granted and the judgment dismissing the complaint reversed.[1]

Although the sophisticated applicants for intervention concededly "followed the fortunes or ill fortunes of the Alleghany Corporation through this litigation with pretty close attention," they allegedly did not learn of the Board's decision not to seek certiorari until April 4, 1965. Several days later, upon appellants' application, Chief Judge Ryan signed an order directing the Corporation, Kirby and the other defendants to show cause why intervention should not be permitted. After a careful hearing, he denied intervention, noting among other considerations that the applicants had watched closely the course of the litigation from the outset but sought to intervene only on the eve of the deadline for filing a certiorari petition.[2]

█ █ We fully agree with the District Court's conclusion that, on the record before it, the decision of the independent members of the Board of Directors not to apply for certiorari, after consultation with independent counsel and full presentation and consideration of relevant business and legal implications, did not result in "inadequate representation as a matter of law." We know of no proposition of law that permits shareholders, absent any allegations of bad faith, collusion or negligence, concededly neither present nor charged here, cf. Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961), to intervene, as of right, in order to continue litigation that independent members of the Board of Directors, acting in good faith and in the exercise of sound business judgment, have decided to terminate. Indeed, the independent directors who voted unanimously to take this step represent approximately 1,800,000 shares of Alleghany common stock whose equity would increase by $10,000,000 if the applicants' prophecy of ultimate victory were to be fulfilled.

█ In any event, it is necessary to uphold the order denying intervention at this stage, when this protracted litigation which has occupied so many judges' time for so long is taking its last gasp of breath, since we do not believe Judge Ryan abused his discretion in

---

1. An affidavit by James W. Deer, a member of the Board, stated that the directors considered, *inter alia*, the following factors: (a) The likelihood that if certiorari were granted the litigation would continue for many years at great expense, and (b) that it would proceed against Allan P. Kirby alone "even though he was the only person * * * as to whom everyone * * * had agreed no case of fraud or wrong-doing had been made out." (c) If the settlement were reopened, the Corporation might lose control of Investors Diversified Services, Inc., an investment valued at more than $115 million and constituting over one-half its total assets. (d) Continued litigation would deprive the shareholders of a management able to concentrate on corporate affairs. (e) The likelihood, conceded in the District Court, that certiorari would not be granted. These reasons relate not to a fear of ultimate victory for the corporation, which the dissent perhaps misunderstandingly characterizes as "astonishing frankness," and much less to possible embarrassment and expense to Kirby. Rather, they are valid policy considerations hinged to the problems attendant upon lengthy continuation of possibly, if not probably, fruitless litigation.

2. On April 12, 1965, the last day for filing the certiorari petition, this Court denied the applicants' request to recall its mandate but set down the appeal from Chief Judge Ryan's order for April 19. On the same day, the applicants requested the Circuit Justice to extend the Corporation's time to petition for certiorari. Mr. Justice Harlan, "anticipating that [we would] act promptly," extended the time for filing the petition for a period of five days after our judgment on this appeal, or to and including April 29, 1965, whichever date proves to be earlier.

finding that the applicants' midnight-hour efforts were untimely. See McKenna v. Pan American Petroleum Corp., 303 F.2d 778 (5 Cir. 1962); Tesseyman v. Fisher, 231 F.2d 583 (9 Cir. 1955); Simms v. Andrews, 118 F.2d 803 (10 Cir. 1941). See generally 4 Moore, Federal Practice § 24.13 at 99 (2d ed. 1963). As we see it, the timeliness requirement, specifically articulated in Rule 24(a), is related to the question whether the shareholders' interests are or may be inadequately represented, for whether an application to intervene is prompt or tardy also turns on when the interests of the proposed intervenors were no longer properly represented. As we have noted, there are no allegations or claims that the Board of Directors acted in bad faith, fraudulently or dishonestly, but we shall assume, *arguendo*, that the applicants' interests may have been or are inadequately represented despite the absence of such charges because the Board of Directors was acting under what counsel, at oral argument, picturesquely characterized, but without anything more than his *ipse dixit,* as "the brooding presence" of the Kirby group.[3]

But even that *arguendo* assumption, when considered with the background of the applicants' asserted long-time interest in this litigation and the fact that the Kirby group regained direct control of the Corporation as long ago as December, 1963, would compel us to agree with the District Judge's findings and to conclude that he acted well within the bounds of his discretion in determining that the application to intervene—made sixteen months later—was untimely.[4]

We have specifically rejected the applicants' suggestion that adequacy of representation should, under these circumstances, be judged solely by the soundness or improvidence of the Board's decision to terminate the litigation. Suppose, for example, that instead of eight directors voting unanimously not to petition for a writ of certiorari, the same result was based on a five to three vote, with the three dissenting directors being fully independent (three hypothetical bishops or even the applicants themselves and a member of the law firm they have engaged). We have no doubt that after such a decision, and absent any claim of fraud or wrongdoing, the shareholders could not intervene *as of right* on the basis of inadequate representation, notwithstanding the fact that this Court affirmed the lower Court judgment by a 4–4 vote.[5]

Adequacy of representation, at least in the context of this case, depends not on our assessment of whether the Board should have authorized a certiorari petition, but rather on whether shareholder interests were fully and fairly considered when the Board reached its decision. Stated somewhat differently, the mere fact that a particular decision is adverse to certain interests does not necessarily mean those interests were not adequately represented in the decision-making process or in the decision itself.

Chief Judge Ryan acted well within the bounds of his discretion in refusing

3. Applicants' counsel expressly refused to characterize the Board as "dominated" by the Kirby group.

4. If, as the dissent suggests, timeliness depends on whether the granting of intervention will prejudice or delay the conduct of the action by the original parties, then we are led to the implausible conclusion that there is a *right* to intervene regardless of the time that has elapsed since inadequate representation arose. In any event, since the applicants admittedly kept close watch on the course of this litigation and since it is conceded that there was no duty to inform all the shareholders of the decision not to authorize a petition for certiorari, we do not believe that the District Court abused is discretion.

5. If the applicants are aggrieved by any possible wrongdoing of the Board of Directors in deciding to terminate the litigation, the District Court's denial of intervention does not preclude a derivative suit based on such claims.

to resuscitate this dying litigation which has received so much judicial attention in so many courts for so many years when he denied the application for intervention as untimely.

Affirmed. The mandate shall issue forthwith, all the Judges of this panel so directing.

HAYS, Circuit Judge:

I dissent.

It seems to me to be naive to believe that the board of directors was not subject to the determinative influence of Kirby when it voted not to proceed with this case. No one who knows anything about the conduct of corporate enterprise considers that the major stockholder's withdrawal from the room when a vote is taken amounts to anything more than an empty ceremonial.

If corroboration is needed for the proposition that this board of directors did not adequately represent the interests of the applicants for intervention, ample corroboration is to be found in the reasons given, with astonishing frankness, for abandoning the litigation. The principal reason given for not applying for certiorari is the fear that the corporation might win. One of the reasons given for not wanting to win is that a victory for the corporation would be embarrassing (and expensive) for Kirby.

The application for intervention was obviously "timely" within the meaning of Rule 24. The requirement of timeliness in that Rule refers not to some vague standard of laches but to the making of an application at a time when granting it will not prejudice or delay the conduct of the action by the original parties. There is no such prejudice or delay here. Nor, for that matter, was there any laches. The application was made promptly upon the discovery that the applicants' interests were no longer being adequately represented.