The **AMALGAMATED SUGAR COMPANY, LLC Corporation and LN Partnership, Plaintiffs-Appellees,**

v.

**NL INDUSTRIES, INC., Robert A. Bicks, Nicholas F. Brady, Maurice F. Granville, William A. Marquard, James F. Mathis, Theodore C. Rogers, Ian M. Ross, Herman J. Schmidt, Robert G. Schwartz, Donald V. Seibert, Eleanor B. Sheldon, and Thomas P. Stafford, Defendants-Appellees,**

**Richard Rothenberg, Appellant.**

**No. 1325, Docket 87–7287.**

United States Court of Appeals, Second Circuit.

Argued June 17, 1987.

Decided July 28, 1987.

Thomas A. Gottschalk, Washington, D.C. (Kirkland & Ellis, Frederick M. Rowe, Daniel F. Attridge, Jeffrey A. Rosen, Yosef J. Riemer, Washington, D.C., Townley & Updike, James K. Leader, New York City, of counsel), for plaintiff-appellee The Amalgamated Sugar Co.

Dorsey & Whitney, New York City (Richard L. Bond, John G. Rainey, Jr., of counsel) for defendant-appellee NL Industries.

Irving Malchman, New York City (Kaufman, Malchman, Kaufmann & Kirby, of counsel), for appellant.

Before OAKES, MESKILL, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Richard Rothenberg, owner of 100 shares of NL Industries, Inc. ("NL"), appeals from an order of the District Court for the Southern District of New York, Broderick, *Judge*, entering a permanent injunction pursuant to 28 U.S.C. § 2283 enjoining Rothenberg from pursuing any action "premised upon the asserted validity" of NL's preferred share purchase rights plan ("purchase rights plan"), sometimes referred to as a "poison pill".

The district court granted the injunction because it found that (1) both the preliminary injunction it had granted earlier, *see Amalgamated Sugar Co. v. NL Industries, Inc.*, 644 F.Supp. 1229 (S.D.N.Y. 1986), and a final consent judgment it had entered, had established the invalidity of the purchase rights plan and were valid final judgments entitled to res judicata effect; (2) Rothenberg was raising, in New Jersey litigation, the same claim that had been decided adversely to him in the district court; and (3) NL and its directors had adequately represented Rothenberg in the earlier litigation.

Rothenberg appeals. Because we agree that the final consent judgment entered by the district court is entitled to res judicata effect, we hold that the district court properly exercised its authority under § 2283 to enjoin relitigation in the New Jersey courts and affirm.

## BACKGROUND

NL is a corporation, with its principal place of business in New York, that is engaged primarily in the oil service and chemical production businesses. *Id.* at 1231. Amalgamated Sugar is a Utah corporation with its principal place of business in Utah. The two other appellees, LLC Corp. and LN Partnership, are organized and exist under the laws of Delaware and Texas, respectively. Both have their principal places of business in Texas.

The litigation leading to this appeal began on June 25, 1986, when Amalgamated Sugar Co., LLC Corporation, and LN Partnership (collectively, "Amalgamated") sued NL and 12 of its directors in federal court, seeking a declaration that NL's purchase rights plan was invalid under New Jersey law and a preliminary injunction against its implementation. *See* 644 F.Supp. 1229 (S.D.N.Y.1986). The effect of the purchase rights plan, which had been adopted by the NL directors on April 22, 1986, was, simply put, to dilute the voting power and equity of any acquiring shareholder whose holdings of NL common stock exceeded 20 percent. *See id.* at 1232–34. The plan reflected NL's concern that, because its

shares were undervalued in the market, it was vulnerable to takeovers at less than adequate prices. *Id.* at 1231.

The validity of the purchase rights plan was crucial to Amalgamated because it was seeking to negotiate a cash merger with NL and had already acquired approximately 17 percent of NL's stock prior to filing suit. On July 3, 1986, after filing suit, it announced that it had acquired over 20 percent of NL's common stock and commenced a tender offer for all of NL's shares, conditioned on judicial invalidation of the purchase rights plan.

A hotly contested litigation battle ensued in the district court, in which NL and its directors vigorously defended the validity of the purchase rights plan. The proceedings included extensive briefing, five lengthy hearings, and discovery that produced nearly 9,000 pages of documents. The evidence included depositions from 18 people, including the chief executive officers and chief financial officers of NL and Amalgamated, 16 affidavits, and courtroom testimony. Judge Broderick commented that he had "rarely, in ten years on the bench, seen a matter as vigorously and effectively contested", and that no additional evidence "could have been adduced on the subject" of the validity of the purchase rights plan.

Although NL shareholders, including Rothenberg, were notified of the litigation and of the attack on the purchase rights plan's validity, Rothenberg did not move to intervene but, through his counsel, wrote to Judge Broderick to inform the court that he planned to bring an action in the New Jersey state court seeking a declaration of the purchase rights plan's validity.

On August 5, 1986, the district court denied NL's motion to stay or dismiss on the grounds that the matter concerned New Jersey state law, and preliminarily enjoined NL and its directors from implementing or otherwise utilizing the purchase rights plan pending final adjudication of the matter. 644 F.Supp. at 1240. The court found that the purchase rights plan was *ultra vires* as a matter of New Jersey state law because it allowed discrimination among shareholders of the same class and series, *id.* at 1234, and because the plan effectively prevented stockholders from receiving tender offers. *Id.* at 1238.

On August 6, 1986, Rothenberg filed suit in the New Jersey state court against Amalgamated and NL, seeking to relitigate the validity of the purchase rights plan that had been declared invalid by Judge Broderick.

On August 8, 1986, Amalgamated purchased 14 million shares of NL on the open market, thereby obtaining a 51 percent interest in NL. Despite Amalgamated's acquiring a 51 percent interest in the company, NL's 13 member board of directors, all but one of whom were independent of NL management, remained intact and retained operational control of NL. Provisions in NL's certificate of organization prevented Amalgamated from electing a majority of NL's directors for at least two years.

In the wake of this extremely costly and arduous litigation, and faced with a substantial likelihood of ultimate defeat, the NL directors authorized NL to enter into settlement negotiations with Amalgamated, and on August 13, 1986, NL followed the advice of its highly qualified independent counsel and financial advisors and approved a settlement agreement. The effect of the agreement was to permit Amalgamated to nominate a majority of NL's board sooner than would otherwise have occurred, while providing important protections for NL's minority shareholders. Although Amalgamated agreed to maintain established benefit plans for certain NL employees, the agreement did not provide any benefit to the independent NL directors and, in fact, required that nine of the directors resign their board positions.

A crucial effect of the agreement was termination of the costly litigation between the parties. Absent entry of the final consent judgment, the purchase rights plan would have diluted Amalgamated's voting power from 51 percent to 12 percent and diluted its investment by hundreds of millions of dollars. As the district court correctly found, both Amalgamated and NL would have been burdened with additional

legal expenses and would have been "seriously impeded in the conduct of their business affairs" if the validity of the purchase rights plan remained litigable.

On August 14, 1986, the parties advised the district court of their agreement and the court granted Amalgamated's motion to convert its preliminary injunction into a final judgment and permanent injunction against implementation of the purchase rights plan.

On November 18, 1986, Amalgamated and NL filed a summary judgment motion on res judicata grounds in the New Jersey litigation. That court denied the motion without prejudice and indicated that it would not resolve the issue of the finality, for res judicata purposes, of the final consent judgment. Leave to take an interlocutory appeal was denied. Amalgamated then moved in the district court for a temporary restraining order and a permanent injunction, pursuant to 28 U.S.C. § 2283, against relitigation, in the New Jersey action or in any other action, of the validity of the purchase rights plan.

After a hearing at which Rothenberg appeared and argued through counsel, the district court entered a temporary restraining order prohibiting Rothenberg's relitigation, in conflict with the prior federal judgment, of the validity of the purchase rights plan. Following an additional hearing at which Rothenberg was again represented by counsel, Judge Broderick delivered an extensive oral opinion granting Amalgamated's motion for a permanent injunction. *Amalgamated Sugar Co. v. NL Industries*, Transcript of Oral Opinion, 86 Civ. 5010 (S.D.N.Y. March 18, 1987).

Noting that he was "satisfied that the documents submitted and the hearings had developed every detail that was pertinent to the resolution" of the issue of the validity of the purchase rights plan, *id.* at 3, Judge Broderick rendered comprehensive findings of fact and conclusions of law. He found that operational control of NL had not passed to Amalgamated prior to entry of the consent judgment, *id.* at 4, that the settlement agreement had been approved by persons with adverse interests, *id.* at 5, and that the settlement agreement itself had provided that the NL directors would remain in charge of the litigation on NL's behalf, *id.* at 13. On the basis of these facts, he concluded that there was a live controversy between the parties until the final judgment was signed. *Id.*

The district court exercised its power under 28 U.S.C. § 2283 to "grant an injunction to stay proceedings in a state court * * * where necessary in aid of its jurisdiction, or to protect or effectuate its judgments" because it concluded that the elements of res judicata—final judgment on the merits, identity of issues, and identity or privity of parties—were satisfied. *See* Transcript at 16–17. Relying on Judge Friendly's opinion in *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), the district court found that its opinion accompanying the preliminary injunction, 644 F.Supp. 1229, like the consent judgment it had entered, was a valid final judgment. *See* Transcript at 17–19. Second, the court found that an identical issue—the validity of the purchase rights plan—was being raised in the New Jersey court. *Id.* at 20. Finally, the court found that "every interest which Mr. Rothenberg could possibly have had in the establishment of the validity of the rights plan was pressed before me as vigorously as it could be pressed", *id.* at 24, and that it was appropriate under the circumstances that the shareholder be bound by the actions of NL and its directors.

The court found further that the New Jersey court's denial of summary judgment was not itself a final judgment on the merits that would be entitled to res judicata effect, *see id.* at 10–11, and that both Amalgamated and NL would be irreparably harmed if the injunction did not issue. *See id.* at 13–14.

On this appeal, Rothenberg argues that by filing its motions for summary judgment in the New Jersey court, Amalgamated waived its right to seek relief in federal court; that the district court should have abstained from interfering with the state

proceeding; that the prior consent judgment was not res judicata against the shareholder, Rothenberg; and that the preliminary injunction was not a final judgment and therefore not entitled to res judicata effect. Since none of these arguments has merit, we affirm.

## DISCUSSION

■ 28 U.S.C. § 2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." A district court may properly enjoin state court proceedings in order "to protect or effectuate its judgments" when it is necessary to preserve its authority or to avoid needless litigation. *See In re Baldwin-United Corp.*, 770 F.2d 328, 335–36 (2d Cir.1985); *Browning Debenture Holders' Committee v. DASA Corp.*, 605 F.2d 35, 38 (2d Cir.1978); *Samuel C. Ennis & Co. v. Woodmar Realty Co.*, 542 F.2d 45, 49 (7th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977); *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 249 (2d Cir.1961). While the Anti-Injunction Act is designed to avoid disharmony between federal and state systems, the exception in § 2283 reflects congressional recognition that injunctions may sometimes be necessary in order to avoid that disharmony. *See Southwest Airlines v. Texas Int'l Airlines*, 546 F.2d 84, 91 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

■ The exception in § 2283 applies when the state court proceeding would otherwise be barred by res judicata. *See In re Corrugated Container*, 659 F.2d 1332, 1335 (5th Cir.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *Browning*, 605 F.2d at 40; *Southwest Airlines*, 546 F.2d at 94 and n. 30; *Ennis*, 542 F.2d at 49. In this case, the district court acted properly when it enjoined Rothenberg from pursuing a state court adjudication of the validity of the purchase rights plan because the district court's prior consent judgment, invalidating that plan, was entitled to res judicata effect.

■ Res judicata will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation. *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985). The doctrine was judicially established as a means to promote legal economy and certainty. *Expert Electric Co. v. Levine*, 554 F.2d 1227, 1232 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

■ The general rule is that a final consent decree is entitled to res judicata effect. *SEC v. Randolph*, 736 F.2d 525, 528 (9th Cir.1984); *Wallace Clark & Co. v. Acheson Industries*, 532 F.2d 846, 848 (2d Cir.) (citing, *e.g.*, *United States v. Southern Ute Indians*, 402 U.S. 159, 91 S.Ct. 1336, 28 L.Ed.2d 695 (1971); *Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 913 (2d Cir.1974); 1B Moore, Federal Practice ¶ 6.409[5], at 1032 (2d ed. 1974)), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). This is so because the entry of a consent judgment is an exercise of judicial power, *Pope v. United States*, 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944), that is entitled to appropriate respect and because of the policy favoring finality of judgments. *See Nestle Co. v. Chester's Market*, 756 F.2d 280, 282 (2d Cir.1985).

■ In another case, we noted that "absent evidence of collusion, judicial [consent] decrees disposing of issues in active litigation cannot be treated as idle ceremonies without denigrating the judicial process." *Wallace Clark*, 532 F.2d at 849. In this case, Rothenberg argues that the district court lacked subject matter jurisdiction to enter the consent judgment because there was no case or controversy between the parties when the judgment was entered. We disagree.

■ We have no quarrel with the general rule that " 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome' ", *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353

(1982) (citations omitted), the case is moot and therefore nonjusticiable. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 304–05, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895 (1979) (where a sufficiently real and concrete dispute is not presented, district court may not consider the claim); *SEC v. Randolph,* 736 F.2d 525, 528 (9th Cir.1984) (existence of a case or controversy is a threshold requirement for jurisdiction).

■ The fact that the parties have arrived at a settlement agreement, however, does not lead inevitably to the conclusion that no controversy exists between the parties up to the time the judgment is entered. *Id.* Where the consent judgment provides for prospective injunctive relief, the case does not become moot prior to entry of the decree. *Id.* (citing *Swift & Co. v. United States,* 276 U.S. 311, 325–26, 48 S.Ct. 311, 314–15, 72 L.Ed. 587 (1928)). In this case, one of the provisions of the consent decree "permanently enjoined [NL] from taking any steps to implement or otherwise utilize the preferred share purchase rights plan". Thus, until entry of the judgment, Amalgamated had a legally cognizable interest in securing protection against both the burdens of additional litigation and the potentially devastating financial effects of the purchase rights plan.

■ We find no error in the district court's rejection of Rothenberg's suggestion that NL colluded with Amalgamated in reaching the settlement agreement. Control of NL remained with the independent board of directors after Amalgamated acquired 51 percent of NL's stock; up until settlement the directors had vigorously defended the validity of the purchase rights plan, and there is every indication in the record that the settlement represented their informed judgment that the interests of NL and its shareholders would be served best by settlement.

■ Based on the foregoing, the district court had jurisdiction to enter the consent decree. However, that decree is res judicata as to the claim Rothenberg has attempted to assert in the state court only if there is sufficient privity between Rothenberg and NL and its directors. The doctrine of privity, which extends the res judicata effect of a prior judgment to nonparties who are in privity with the parties to the first action, is to be applied with flexibility. *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980). We agree with the district court that the relationship between the parties in the context of this litigation was sufficiently close to support a finding of privity and thus to preclude Rothenberg's relitigation of this issue. *See Southwest Airlines,* 546 F.2d 84, 95 & n. 38 ("privity * * * represents a legal conclusion that the relationship between [the parties] is sufficiently close to [support] preclusion") (citation omitted).

■ As the district court concluded, there is no bright line rule as to whether or not shareholders are in privity with their corporation for res judicata purposes. Rather, a finding of privity between a shareholder and the corporation depends on whether, under the circumstances, the interests of the nonparty were adequately represented. *See Ellentuck v. Klein,* 570 F.2d 414, 425–26 (2d Cir.1978); *Expert Electric,* 554 F.2d at 1233; *Southwest Airlines,* 546 F.2d at 95; *Alleghany Corp. v. Kirby,* 344 F.2d 571, 573–74 (2d Cir.1965), *cert. dismissed,* 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966).

In *Expert Electric,* we concluded that "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment". 554 F.2d at 1233. In that case, we held that individual electrical contractors were bound by a judgment entered against the representative association where the contractors' interests were advanced by the association in the earlier litigation. *See id.* at 1234. *See also Southwest Airlines,* 546 F.2d at 98 (airline adequately represented by city where, in earlier litigation, government represented the only legal interests airline had in enforcing ordinance). A board of directors is vested with the authority to manage the affairs of the corporation, *see, e.g.,* N.J. Stat.Ann. § 14A:6–1 (West Supp.1986), and thereby represents the shareholders' interests in the corporation.

In *Alleghany Corp. v. Kirby,* where we refused to allow shareholders to intervene

in a litigation after the board of directors voted not to authorize a petition for a writ of certiorari, we concluded that, absent bad faith, collusion, or negligence, shareholders may not intervene as of right "in order to continue litigation that independent [board] members, acting in good faith and in the exercise of sound business judgment, have decided to terminate." 344 F.2d at 573. We noted further that the "fact that a particular decision is adverse to certain interests does not necessarily mean those interests were not adequately represented in the decisionmaking process". *Id.* at 574. *See Southwest Airlines,* 546 F.2d at 100 (individual pecuniary interest alone insufficient to justify relitigation).

The Supreme Court has stated that collateral estoppel can be applied to nonparties where the litigating party acted in a fiduciary capacity in protecting the nonparties' interest. *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 *rehearing denied,* 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974). In this case the board of directors acted in its fiduciary capacity when it represented the shareholders' interests in the validity of the purchase rights plan. Since the distinction between collateral estoppel (issue preclusion) and res judicata (claim preclusion) is not important in this case, where the issue—the validity of the purchase rights plan—and the claim—seeking a declaration of that validity—are nearly identical, we find *Sea-Land* to be strong authority for finding privity in this case. Furthermore, the NL board members acted within their fiduciary capacity, as required by *Expert Electric, supra,* and Rothenberg may not opt now to relitigate the validity of the purchase rights plan after he failed to intervene earlier, merely because he claims to have an interest that was abridged by the consent decree. *See Alleghany,* 344 F.2d at 574.

"The question whether a party's interests in a case are virtually representative of the interest of a nonparty is one of fact for the trial court." *Aerojet-General Corporation v. Askew,* 511 F.2d 710, 719 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). In this case, the district judge was thoroughly familiar with every phase of the extensive proceeding that led to entry of the consent judgment. His finding that "Mr. Rothenberg had no interest in the rights plan which could be presented to the court in New Jersey that was not presented * * * by * * NL and its directors", and that, therefore, an injunction against relitigation by Rothenberg should issue, was not clearly erroneous. *See Bechtel Petroleum, Inc. v. Webster,* 796 F.2d 252, 253 and n. 2 (9th Cir.1986) (noting that district judge who presided over earlier litigation was in best position to assess relitigation allegation). Because the elements of res judicata were satisfied, the district court properly granted the injunction.

■ This was not a case where the district court should have abstained, either from adjudicating the merits of the purchase rights plan, or from enjoining Rothenberg's relitigation of that issue. It is well-established that a federal court exercising diversity jurisdiction need not refrain from deciding questions of state law, *see McNeese v. Board of Ed. for Community Unit School Dist. 187,* 373 U.S. 668, 673 n. 5, 88 S.Ct. 1433, 1436 n. 5, 10 L.Ed.2d 622, (1963); *Williams v. Green Bay & W.R. Co.,* 326 U.S. 549, 553–54, 66 S.Ct. 284, 286, 90 L.Ed. 311 (1945) (citing *Meredith v. Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 10, 11, 88 L.Ed. 9 (1943)); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380, 386 (2d Cir.1968), even where the corporate law of another state, 326 U.S. at 553, 66 S.Ct. at 286, or complex questions of unsettled state law, *id.,* 66 S.Ct. at 286; 320 U.S. at 234, 64 S.Ct. at 11; 392 F.2d at 386, are involved.

■ After the district court adjudicated the merits of the purchase rights plan prior to granting the preliminary injunction, and entered a final consent judgment incorporating the terms of the parties' settlement agreement, it was not required to abstain on principles of comity from issuing the injunction against relitigation by Rothenberg in the state court. Where a state court has not ruled on the merits of the res judicata claim, the district court may enter an injunction pursuant to the relitigation exception in § 2283. *Parsons Steel v. First Alabama Bank,* 474 U.S. 518, 523–24,

106 S.Ct. 768, 772 (1986). *Cf. Pennzoil Co. v. Texaco, Inc.,* — U.S. —, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987) (describing conditions implicating an "important state interest" justifying abstention). In this case, the New Jersey court had not yet ruled on the merits of the res judicata defense raised by Amalgamated, but had indicated that it would consider the merits of the res judicata defense only in the context of a full trial on the merits of Rothenberg's claim regarding the validity of the purchase rights plan. In short, because the New Jersey court had not entered a prior final judgment on the merits, but had merely denied the summary judgment motion without prejudice, the district court was not required to abstain from issuing the injunction.

Amalgamated acted properly in moving for summary judgment on res judicata grounds in the New Jersey court prior to seeking injunctive relief in the district court, thereby attempting to avoid invoking the more intrusive remedy of injunctive relief. Rothenberg's argument that, by so proceeding, Amalgamated waived its rights to seek injunctive relief in the federal court is without merit. *See Samuel C. Ennis & Co.,* 542 F.2d 45, 48 (7th Cir.1976) (rejecting claim that, by filing motion to dismiss in state court and waiting one year before seeking injunction, appellants had waived right to federal relief where there was no indication of "intent to relinquish" federal right and no reasonable and detrimental reliance by appellees).

The only suggestion of waiver that occurred in this case can be attributed to Rothenberg, who, although he monitored the federal litigation closely, chose not to intervene in the litigation of the merits of the purchase rights plan, apparently because he refused to concede the federal court's competence to decide questions arising under state law. *Cf. Silcox v. United Trucking Co.,* 687 F.2d 848, 852 (6th Cir. 1982) (where a party fails to take full advantage of an opportunity to litigate, he may not complain that the matter was not fully litigated). In *Silcox,* the appellant litigated in the district court, failed to appeal an adverse decision, and sought to relitigate in state court. *Id.* Although

Rothenberg was not a party in the district court, he was adequately represented; if he believed that he was not he should have sought to intervene. Policies favoring the finality of judgments, judicial economy, and repose for the parties would be violated if individual shareholders were permitted successive individual claims after those claims had been fully litigated by a board of directors acting for the best interests of the corporation in compliance with their fiduciary duties.

Since the district court's order was fully supportable on the basis of the final consent decree, there is no need to consider the interesting argument based on Judge Friendly's decision in *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80 (2d Cir.1961), that the preliminary injunction could form the basis for applying res judicata. On that issue we express no opinion. The order of the district court is affirmed.