**J.W. KAEMPFER, Jr., et al., Plaintiffs,**

v.

**Philip J. BROWN, et al., Defendants.**

**Civ. A. No. 87–0050.**

United States District Court,
District of Columbia.

March 18, 1988.

David Kuney, Paul Kaplan, Washington, D.C., for American Sec. Bank.

Nicholas A. Addams, Washington, D.C., for defendants Philip J. Brown, William J. Brown, B & W Management, Inc.

## MEMORANDUM OPINION AND ORDER

JOHN H. PRATT, District Judge.

The present action is one in a long series of lawsuits, bankruptcy proceedings, arbitrations and appeals relating to the commercial development of property located at 1250 24th St., N.W., Washington, D.C. by J.W. Kaempfer and affiliated groups. This adversary proceeding was transferred to us from the United States Bankruptcy Court on January 6, 1987. Plaintiffs seek declaratory and injunctive relief regarding their purchase of a 37.5% interest in the property identified above. Defendants,[1] owners of the remaining interest in the property, have answered plaintiffs' complaint and in turn asserted counterclaims against plaintiffs, American Security Bank, N.A.,[2] and Robert McChesney.[3]

In a Memorandum Order dated June 2, 1987 we granted American Security Bank and Robert McChesney's motions to dis-

---

**1.** The term "Defendants" will hereinafter be used to refer to the debtor-defendants only. They are William Brown, Philip Brown and B & W Management. John Guinee, Jr., trustee in bankruptcy for the debtor-defendants, will be referred to as "Trustee", although he is also a defendant in this action.

**2.** American Security Bank is the lender of a $38.5 million construction loan relating to the 1250 24th Street project.

**3.** Mr. McChesney was the attorney for the Loretto Brown Estate during the time period at issue.

miss the counterclaims against them. In the motion presently before us, American Security Bank (American) seeks to enjoin these defendants from 1) continuing to prosecute an action entitled *Philip J. Brown, et al. v. American Security Bank, N.A.*, C.A. No. 7403–87, in the Superior Court of the District of Columbia,[4] and 2) commencing future litigation, or "serving any legal process upon" American without the prior approval of this court. Upon careful consideration of the briefs filed by the parties and the record as a whole, we grant American's motion in its entirety.

### Background

In 1979 the debtor-defendants agreed to lease Loretto Brown's 37.5% interest in the family's property at 1250 24th Street for as long as Loretto Brown lived. The Agreement provided the Brown family, upon Loretto Brown's death, the right to purchase his interest in the real estate within six months of his death by paying "all cash" to the Estate.

In 1981, the Browns and their company, B & W Management, filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. As part of the Amended Plan of Arrangement approved by the Bankruptcy Court in 1983, the Kaempfer Company obtained the right to purchase Loretto Brown's interest in the estate in the final month of the six-month period, if the defendants did not purchase it earlier. After Loretto Brown's death on March 28, 1986, the Browns sought financing to purchase the 37.5% interest. They were ultimately unable to tender the "cash" necessary to satisfy the Estate's requirements for purchase within the period provided.

On September 3, 1986, Kaempfer Company transferred its previously acquired right to purchase the property interest to 1250 24th Street Associates Limited Partnership (Associates). On the same day Associates tendered $1.8 million in cash to the Estate of Loretto Brown. The Estate accepted the tender and delivered the deed to Associates.

Plaintiffs J.W. Kaempfer, the Kaempfer Company, Associates, 1250 24th Street Associates Land Partnership and the Estate of Loretto Brown bring this suit seeking a declaratory judgment that the purchase of the property was valid and effective, and that they are in no way liable to the defendants or Trustee. As noted, defendants filed a counter-claim against American, alleging in essence that American acted improperly to "block" efforts by the Brown family to obtain a loan to finance their acquisition of the 37.5% interest in the property. Defendants alleged tortious interference with contract and tortious interference with business opportunity or expectation by American.

### Discussion

I. Motion for Injunction of District of Columbia Superior Court Action

A. *The 'Relitigation Exception' to the Anti-injunction Act*

The authority and equitable power to enjoin a proceeding in a state court is restricted and limited by Title 28 of the United States Code. Section 2283 of that Title prohibits a federal court from enjoining proceedings in a state court, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction *or to protect or effectuate its judgments*" (emphasis added). 28 U.S.C. § 2283 (1982). The latter exception to the general prohibition against enjoining state court proceedings is known as the "relitigation exception."

■ American asserts that an injunction is necessary in order to "protect or effectuate" our earlier judgment of June 2, 1987 denying defendants' cross-claim against American. It is well settled that when a final judgment has been rendered in a federal court on the same matter as asserted in the state court suit, the federal court is empowered to protect that judgment by granting the type of injunctive relief sought here. *See Woods Exploration and Production Co. v. Aluminum Company of America*, 438 F.2d 1286, 1312–13 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92

---

**4.** This case will hereinafter be referred to as the "Superior Court Action."

S.Ct. 701, 30 L.Ed.2d 736 (1972); *In re National Student Marketing Litigation,* 655 F.Supp. 659, 662 (D.D.C.1987). It is within the court's discretion to decide whether or not to take such action and absent an abuse of that discretion the decision will be left undisturbed. *Id. See also Delta Air Lines, Inc. v. McCoy Restaurants, Inc.,* 708 F.2d 582, 587 (11th Cir. 1983).

■ This case falls squarely within the relitigation exception of the Anti-injunction Act. We previously dismissed [5] the same claims presented in the Superior Court action [6] based on the same set of facts alleged.[7] Accordingly, if the D.C. Superior Court were to continue the proceedings of this case the final adjudication of the matter by this court could in effect be nullified and set aside. The relitigation exception to the Anti-injunction statute was designed to avoid precisely this type of result.

### B. *Full Faith and Credit and the Relitigation Exception to the Anti-injunction Act*

■ On November 9, 1987, while this motion was pending, the Honorable George Goodrich of the District of Columbia Superior Court issued two one-page orders summarily denying [8] both American's Motion to

---

5. In our Memorandum Order dated June 2, 1987 we granted American's Motion to Dismiss defendants' counterclaim against it. We specified three independent grounds for dismissal. As an initial matter, we identified a procedural defect which constituted a basis for dismissal. American Security was not a party to the action, and thus the filing of the counterclaim against it, without joinder, was inappropriate. Second, we noted that "even if" defendants had properly asserted their counterclaim, the claims against American and McChesney failed to state a claim upon which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The language of our opinion clearly indicated that we considered this determination an independent ground for dismissal. Finally, we found that "even if" the elements of the torts had been properly alleged in the counterclaim, the conduct at issue was clearly privileged because American, as the lender of a $38.5 million construction loan to Kaempfer, had merely acted to protect its own financial interest in insisting that the purchase be "all cash".

We decided each of the matters discussed, and indicated that "even if" the other grounds for dismissal did not exist dismissal would nevertheless be appropriate. We did not, as defendants assert, dismiss this action based on the procedural ground alone. We dismissed this action based on defendants' failure to state a claim under Rule 12(b)(6) as well. Contrary to defendants' assertions, we were free to address the merits of American's Rule 12(b)(6) motion and in fact did so. The defendants implicitly recognized this in their June 12, 1987 Motion for Reconsideration where they concentrated their efforts almost entirely on challenging the Rule 12(b)(6) portion of our ruling. Specifically, they detailed their allegations and argued that, properly construed and measured by the appropriate legal standard, dismissal of their claim for failure to state a claim was inappropriate, and that in any case they should have been granted leave to amend their complaint.

We denied their Motion for Reconsideration on July 8, 1987.

Pursuant to Rule 41(b), dismissal for any reason other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, "operates as an adjudication upon the merits," unless the court indicates otherwise. We clearly had jurisdiction of the matter before us, and therefore the cases cited by defendant indicating the non-precedential value of dismissal for lack of jurisdiction are irrelevant and beside the point. Clearly, dismissal for lack of jurisdiction is a special species of dismissal. Nowhere in our decision did we even suggest that jurisdiction might be lacking. Neither did we dismiss the claim in question for failure to join a necessary party under Rule 19(b). Accordingly, our Memorandum Order operated as a final adjudication, with *res judicata* effect.

6. In our June 2, 1987 Memorandum Order we noted that the counterclaims alleged by defendants were the torts of interference with contractual rights and interference with business opportunity or expectancy. The complaint filed by defendants in Superior Court raises *exactly* the same claims. American's Memorandum in support of its Motion to Enjoin Defendants, Ex. C. Much of the language employed in the Superior Court action is identical to that used in defendants' original counterclaim in this court. In any case, we are convinced from a careful reading of the two complaints that the claims raised are identical, and thus find that the relitigation exception applies.

7. Defendants assert in their Memorandum in Opposition to American's Motion to Enjoin that the Superior Court claim is "factually different". We disagree. A review of defendants' Superior Court complaint reveals that that action is based on the same nucleus of facts set forth in defendants' counterclaim in this case.

8. The text of the order denying American's Motion to Dismiss reads in its entirely as follows:

Stay the Proceedings and American's Motion to Dismiss.[9] While neither party has briefed the issue, we find it necessary to examine the effect, if any, of the Superior Court Order upon our ability to grant American's motion to enjoin further proceedings in that court. Upon review of the relevant case law, we find that our authority to enjoin further proceedings pursuant to the relitigation exception remains intact.

In *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed. 2d 877 (1986), the United States Supreme Court addressed the relationship between the relitigation exception to the Anti–injunction Act, 28 U.S.C. § 2283 (1982), and the Full Faith and Credit Act, 28 U.S.C. § 1738 (1982). The court held that once a state court has "finally rejected" a claim of *res judicata*, the Full Faith and Credit Act bars a federal court from enjoining a state action in order to protect a prior federal judgment. *Id.* at 524, 106 S.Ct. at 772. Once the state court has "finally rejected" the claim of *res judicata*, the Full Faith and Credit Act becomes applicable and the federal court must turn to state law to determine the preclusive effect of the state court's decision. *Id.*

The issue before us then is whether the Superior Court has "finally rejected" American's claim of *res judicata*. The components of this inquiry are first, as a threshold matter, whether the Superior Court has in fact decided the issue of *res judicata*, and second, whether if it has its ruling is a "final" one under District of Columbia law.[10] If both of these requirements are met, we are bound by that determination, and can not enjoin defendants from proceeding with the Superior Court action. We find, however, for the reasons discussed below, that the threshold criteria is lacking.

We cannot say with the slightest degree of confidence that the Superior Court has decided the issue of *res judicata*.[11] It is clear in any case, that it has not expressly done so. Based on this court's own experience of almost twenty years, we can say with assurance that Judge Goodrich's one-page order denying American's motion to dismiss is fully consistent with a determination on his part not to decide a case with a complex factual background on a dispositive motion, but rather to allow the case to proceed. His failure to set forth the specific reasons for his action gives support to this view. We interpret *Parsons* as holding that the Full Faith and Credit Act bars a federal court from enjoining a state action in order to protect a prior federal judgment only when a state court has *expressly* rejected the claim of *res judicata*.[12]

---

"[u]pon consideration of Defendant American Security Bank's Motion to Dismiss the Complaint, the Court having also considered the opposition thereto, and having heard from all parties, it is ORDERED that Defendant American Security Bank's Motion to Dismiss the Complaint is denied." American's Supplemental Memorandum in Support of its Motion to Enjoin, Ex. B. This order will hereinafter be referred to as the "Superior Court Order."

**9.** American apparently asserted two grounds for dismissal of the Superior Court action: *res judicata* and failure to state a claim upon which relief may be granted.

**10.** *Parsons,* speaks in terms of "issues" being finally decided. 474 U.S. at 524–25, 106 S.Ct. at 772–773. This implies that a state court need not have rendered a final judgment on the *case* as a whole in order for the principles of *res judicata* and Full Faith and Credit to come into play. *See Texas Employers' Insurance Ass'n v. Jackson,* 820 F.2d 1406, 1421 (5th Cir.1987), *rehearing granted,* 828 F.2d 1. Nevertheless, *Parsons* certainly requires that "the judicial order—

opinion or otherwise— ... be one which the state court regards as final and beyond recall by the court issuing it." *Id.*

**11.** While the *res judicata* issue was briefed, the Superior Court did not specify this as one of its grounds for decision. We will not assume, in the absence of *some* indication, that the Superior Court did in fact consider and reject plaintiff's *res judicata* claim. Courts occasionally reserve the issue for decision later in the proceedings. *See e.g. Amalgamated Sugar Co. v. NL Industries, Inc.,* 825 F.2d 634, 641 (2nd Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 511, 98 L.Ed.2d 511. Given the overwhelming evidence indicating that these claims are barred by the doctrine of *res judicata,* we are hard pressed to find that the Superior Court decided this issue.

**12.** The facts in *Parsons* are very different from those involved here. In *Parsons* the issue of *res judicata* was clearly decided by the state court and respondents waited until after the state court trial had been concluded and a verdict

This is consistent with the concerns articulated by the Supreme Court in *Parsons*[13] and the Fifth Circuit's formulation of the *Parsons* decision in *Texas Employers'*, 820 F.2d at 1417 n. 12.[14] Accordingly, because the Superior Court in our judgment did not *expressly* decide the issue of *res judicata*, we conclude that we maintain the authority, pursuant to the relitigation exception, to issue an injunction enjoining defendants from proceeding with their Superior Court action. For the reasons stated earlier, we grant American's motion for such an injunction. There is no conflict with the Full Faith and Credit clause which, under different circumstances, might otherwise require that we treat Judge Goodrich's cryptic denial of American's motion to dismiss as a finding that the doctrine of *res judicata* does not apply.

## II. Motion to Enjoin Future Suits

American also seeks an order requiring defendants to obtain permission from this court before filing any future action against it in any forum. As the basis for this motion, American asserts that the filing of the Superior Court action, clearly barred by the doctrine of *res judicata*, "reflects [the defendants'] unwavering commitment to attack, in every conceivable way, all of those associated with the development of [the] project which is the subject of this action," and demonstrates its need for protection. American's Memorandum

in Support of its Motion to Enjoin Defendants, at 2.

We are intimately familiar with the subject matter of this litigation and the parties involved, as we presently have before us several cases involving the defendants and the commercial development of the property located at 1250 24th Street, N.W.[15] We have thus become familiar, as trial courts are wont, with the pace, direction and methods of the various parties to this litigation. We have, over the course of this litigation, come to agree with plaintiffs' assessment elsewhere that "[defendants'] strategic plan is clear: through a war of attrition, they intend to create circumstances in which it is impossible [for plaintiffs] to obtain permanent financing, so that plaintiffs will be forced to elect between capitulation to a host of unreasonable and unwarranted demands, or foreclosure of the Ground Lease." *1250 24th Street Associates, et al. v. Brown, et al.*, 86–474, Plaintiffs' Memorandum in Support of their Motion to Modify May 13, 1986 Injunction, at 2–3.

We have been patient in our review of the myriad of motions filed by defendants. They have succeeded in very few, not because we harbor any bias against them, but because the majority of their claims have simply lacked merit. We are convinced at this point that the purpose of many of these motions was not, as defendants assert, to vigorously promote their legal rights, but rather to "torpedo" the 1250

---

rendered before going to the federal court to seek to enjoin the state court proceedings. Here American moved to enjoin the state court proceedings promptly after receiving notification of the pendency of the Superior Court action.

**13.** This approach embodies a sensible accommodation between the competing interests and concerns outlined in *Parsons*. In this view, state and territorial courts are simply required to specify that they are in fact considering and deciding the *res judicata* issue. This places a minimal burden on state and territorial courts while accommodating the important principles underlying the development of the relitigation exception to the Anti-injunction Act.

Requiring state courts to *expressly* decide the *res judicata* issue before foreclosing federal court decisionmaking on this issue would accommodate precisely the two competing con-

cerns addressed in *Parsons*. Namely, that federal court decisions not be relitigated and that state court decisions be equally respected.

**14.** The Fifth Circuit stated: "[i]n *Parsons Steel v. First Alabama Bank*, the [Supreme] Court held that once a state court has *expressly* rejected a claim of *res judicata*, the Full Faith and Credit Act ... bars a federal court from enjoining a state court action, in order to protect a prior federal judgment" (emphasis added). We adopt this interpretation as the one most consistent with the principles set forth by the court in *Parsons*.

**15.** These cases are *1250 24th Street Associates, et al. v. Brown, et al.*, C.A. No. 86–474; *Kaempfer, et al. v. Brown, et al.*, C.A. No. 87–50; *In re B & W Management*, C.A. No. 87–1734 and *In re B & W Management*, C.A. No. 87–3264. We take judicial notice of these related proceedings.

24th Street project, or to make plaintiffs' efforts to develop the property as costly and burdensome as possible. In any case, our task in these proceedings is clear. It is to ensure that defendants receive the due process access to the courts that they are entitled to, while at the same time protecting plaintiffs from malicious and abusive litigation and safeguarding the integrity of the judicial process.

 It is clear that at some point a "continuous pattern of groundless and vexatious litigation will ... support an order against further filings or complaints without the permission of the courts." *Sparrow v. Reynolds,* 646 F.Supp. 834, 839 (D.D.C.1986) (citing *In re Oliver,* 682 F.2d 443, 446 (3rd Cir.1982)); *see also In re Green,* 669 F.2d 779 (D.C.Cir.1981); *McLaughlin v. Bradlee,* 602 F.Supp. 1412 (D.D.C.1985), 803 F.2d 1197; *Urban v. United Nations,* 768 F.2d 1497, 1500 (D.C. Cir.1985) ("[i]t is now well established that a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice."); *Ruderer v. United States,* 462 F.2d 897, 899 (8th Cir.1972), *cert. denied,* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972). *In re Martin Trigona,* 737 F.2d 1254 (2nd Cir.1984). We find that we have reached that point in this litigation.[16] While it is clear that litigiousness alone is not sufficient grounds on which to issue an injunction in the form envisioned here, the facts in these related cases indicate that more than mere litigiousness is present in this action. Where a litigant acts in bad faith, or with a harassive purpose, an order enjoining future suits without prior approval is both appropriate and necessary.[17] *See Ruderer v. United States,* 462 F.2d at 897. We find that these improper purposes are present here.

Accordingly, we hold that defendants must seek our permission before commencing litigation against American in any forum. In seeking leave of this court, defendants must certify that the claims which they raise are unconnected with the fact situation at issue in their counterclaim;

**16.** We note that defendants' conduct in commencing the Superior Court action is just one prong of their multifaceted effort to create an aura of commercial unreasonableness in connection with the project, which will deter future lenders from committing themselves to the permanent financing effort which is presently under way.

After we dismissed American from this suit, and denied defendants' motion for reconsideration, they subpoenaed William Tyson, Vice President of the Bank and requested that he bring to the deposition all of the Bank's files regarding all loans made in connection with the 1250 24th Street project. We quashed the subpoena on June 30, 1987. On July 27, 1987, defendants issued a second subpoena against the bank, asking for the same documents.

On August 25, 1987, we quashed the second subpoena and enjoined the defendants from seeking any further discovery from the bank regarding any loan transactions. On August 28, 1987, several days after we issued our order enjoining future discovery against the Bank, the defendants filed the Superior Court Action. The inference is clear. Defendants were and are unwilling to abide by a decision of this court once made when it is contrary to their will.

This is borne out by the record in this and the related cases. For instance, defendants have filed a suit in the Superior Court of the District of Columbia which, *inter alia,* alleges that B &

W was fraudulently induced to enter into the Ground Lease. In Counts I & II of defendants' counterclaim in *1240 24th St. Associates, et al. v. Brown, et al.,* 86–474, we rejected a similar claim. Memorandum Opinion of May 13, 1986, at 9–11. We held that defendants' fraud claim was barred by 11 U.S.C. § 1144. Their claim had not been brought within the requisite period of time. We indicated at that time that even if defendants' fraud claims were not procedurally barred under the provision indicated, it would "fail on grounds of insufficiency." Nevertheless, defendants appear to be pursuing a claim in Superior Court which contends that they were fraudulently induced to enter into the Ground Lease. As indicated, defendants appear unwilling to take "no" for an answer.

**17.** An injunction is particularly necessary in the context of these cases, where the filing of additional litigation, no matter how repetitive or lacking in merit, will undoubtedly convey a message to the entire financial community that defendants intend to enmesh any potential lender in a web of repetitive and expensive litigation as the price for dealing with the developers of the piece of property at issue in this case (Associates). Thus, as we noted in a related opinion issued this day, in the absence of an injunctive remedy of the type ordered here, Associates' entire project would face irreparable harm, for which there would be no adequate remedy at law.

that the claims which they raise have never before been decided by this or any other court; and that they are not filed for the purpose of harassment. If defendants attempt to commence such litigation without so certifying, they may be found in contempt of court. In addition, as always, any pleadings and papers filed will be subject to the provisions of Rule 11 of the Federal Rules of Civil Procedure.

Orders such as this are generally unnecessary, as the doctrines of *res judicata* and collateral estoppel are usually more than adequate to protect defendants against repetitious litigation. A litigious individual pressing a frivolous claim, though rarely successful on the merits, can be extremely costly to the opposing side and can waste an inordinate amount of court time. This decision is intended to avoid those wrongs while at the same time ensuring that defendants retain access to the federal court system where appropriate.[18] Thus, defendants are entitled to the processes of the district court to file any claim upon a satisfactory demonstration of the novelty of the claim and its *bona fide* nature. This approach is consistent with prior case law, and clearly does not preclude or even unduly burden defendants' access to the judicial system. *See Green,* 669 F.2d at 788.

Accordingly, it is by the court this 18th day of March 1988

ORDERED that defendants are hereby enjoined from continuing to prosecute an action entitled *Brown et al. v. American Security Bank, N.A.,* C.A. No. 7403–87, in the Superior Court of the District of Columbia; and it is

FURTHER ORDERED that defendants are hereby enjoined from commencing future litigation or serving any legal process upon American without prior approval of this court.

---

**18.** Access is not appropriate where the claims are barred by *res judicata* or are filed for harassment or delay purposes.