In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3617

Mark A. Ramsden, Raelynn Ramsden,
and Milton R. Ramsden, individually
and d/b/a Ramsden Dairy,

Plaintiffs-Appellants,

v.

AgriBank, FCB,

Defendant-Appellee.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98 C 221--Barbara B. Crabb, Judge.


Argued February 23, 2000--Decided June 2, 2000




    Before Flaum, Kanne, and Diane P. Wood, Circuit
Judges.

    Flaum, Circuit Judge.  The appellants--Mark A.
Ramsden, Raelynn Ramsden, and Milton R. Ramsden,
individually and d/b/a Ramsden Dairy
(collectively "the Ramsdens")--challenge a
decision by the district court to enjoin a state
court proceeding which the appellee, AgriBank,
alleged was threatening its prior, favorable
federal court judgment. For the reasons stated
herein, we hold that the district court abused
its discretion in enjoining the state court
proceedings, and we therefore reverse.

Background

    The Ramsdens originally brought an action in
the Circuit Court for Portage County, Wisconsin,
against Credit Services of North Central
Wisconsin ACA, AgriBank, and Thomas E. Hass,
AgriBank's employee, alleging tortious conduct in
the sale of certain agricultural property. The
state court dismissed the action against Hass,
whereupon the Ramsdens dismissed the complaint
without prejudice against the remaining
defendants and appealed Hass's dismissal to the
state court of appeals.

While the appeal was pending, the Ramsdens filed a second action against AgriBank in the Circuit Court for St. Croix County, Wisconsin, alleging misrepresentation and other tortious acts in the sale of the property. AgriBank removed the case to the United States District Court for the Western District of Wisconsin.

In federal court, the Ramsdens amended their complaint, alleging that they and their cattle were poisoned by benzene contamination in the water on the farm that AgriBank had sold them. Following extensive discovery, AgriBank moved for summary judgment, arguing that the Ramsdens lacked evidence sufficient to show that any benzene contamination caused the alleged health injuries. The court, applying Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), to the Ramsdens' proposed expert testimony, concluded that the testimony lacked scientific reliability and validity and was therefore inadmissible. Accordingly, the court granted defendant AgriBank's motion for summary judgment. The Ramsdens appealed the judgment to this Court, but they dismissed the appeal voluntarily in exchange for a waiver by AgriBank of recovery of its costs.

While the Ramsdens' appeal was pending, however, the Wisconsin Court of Appeals reversed the trial court's dismissal of Hass from the state court action and remanded the case to the trial court, where it was pursued by the Ramsdens. According to AgriBank, all of the Ramsden's allegations against Hass in that state court suit concern actions taken by Hass in the scope of his employment with AgriBank, and all of the allegations were the subject of the federal court suit against AgriBank. In March 1999, Hass moved for summary judgment in the state court, arguing claim and issue preclusion based on the summary judgment granted to AgriBank in federal district court. The state court denied the motion, finding that, although the elements were present for claim preclusion, considerations of equity and fairness barred application of claim preclusion to the state court action. The court found that under Wisconsin evidentiary law, which is less stringent than the federal Daubert requirements, the Ramsdens' expert would have been allowed to testify. Because of the significant differences in evidentiary rules, because defendant AgriBank had removed the case to federal court, and because the court could not find that the Ramsdens were engaged in vexatious litigation, the state court concluded that it would be unfair to bar the Ramsdens' claim. The state court reached similar conclusions with respect to issue preclusion.

At that point, counsel for AgriBank (the same counsel that represented Hass in the state action) went back to federal court to seek an injunction against the state court permanently enjoining it from further addressing any issues between the Ramsdens and Hass or AgriBank arising from the purchase of the farm property. AgriBank also sought an injunction against the Ramsdens to prohibit them from bringing any further actions against AgriBank or its employees arising from the purchase. The district court granted the injunctions, and the Ramsdens now appeal.

Discussion

The Anti-Injunction Act generally prohibits federal courts from enjoining state court proceedings. 28 U.S.C. sec. 2283. The Act is designed to prevent friction between state and federal courts and to protect state court proceedings from federal interference. See Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 514-16 (1955); see also Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977) (plurality opinion) ("The Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court.").

By its own terms, the Anti-Injunction Act's prohibition is sweeping and provides for only three types of exceptions: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. sec. 2283. These exceptions are narrow ones. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988); Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287 (1970). This case involves the third exception--the "relitigation exception"--which allows a party with a favorable federal judgment to protect that judgment by enjoining repetitive state court proceedings instead of relying on a claim or issue preclusion defense. See Samuel C. Ennis & Co. v. Woodmar Realty Co., 542 F.2d 45, 49 (7th Cir. 1976); 17 Moore's Federal Practice, 121.08[1]. "[A]llowing an unsuccessful litigant to harass other participants in the federal case [through relitigation in state court] flouts and may be said to 'seriously impair the federal court's . . . authority to decide that case.'" Samuel C. Ennis & Co., 542 F.2d at 50 (quoting Atlantic Coast Line R.R. Co., 398 U.S. at 295). Therefore, under certain circumstances a federal court may enjoin state proceedings that attempt to readjudicate previously-decided matters.

Rutledge v. Scott Chotin, Inc., 972 F.2d 820, 825 (7th Cir. 1992).

In this case, the district court concluded that the Act permitted the issuance of an injunction if AgriBank could prove that it had established all the elements of claim or issue preclusion. See Harper Plastics, Inc. v. Amoco Chemicals Corp., 657 F.2d 939, 946-47 (7th Cir. 1981) (holding that the relitigation exception to the Anti-Injunction Act permits federal courts to enjoin state court relitigation of matters finally adjudicated in federal court). After finding that the elements of claim preclusion were satisfied, the court enjoined the Ramsden's state court proceedings against Hass.

Because the relitigation exception bears on the delicate relationship between state and federal courts, strict timing requirements cabin its invocation. In Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 524-25 (1986), the Supreme Court held that once a litigant raises a claim preclusion defense and the state court rules on it, that state court determination binds the federal courts. It reached this conclusion after noting that the Full Faith and Credit Act, 28 U.S.C. sec. 1738, under which a federal court must give the same preclusive effect to a state court judgment that another court of that state would give, embodies Congress' legislative commitment to federalism and comity in the area of judgment recognition. 474 U.S. at 535; see also Kremer v. Chemical Construction Corp., 456 U.S. 461, 481-82 (1982) ("It has long been established that sec. 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."). The Parsons Steel Court went on to hold that "the Anti-Injunction Act and the Full Faith and Credit Act can be construed consistently, simply by limiting the relitigation exception of the Anti-Injunction Act to those situations in which the state court has not yet ruled on the merits of the res judicata issue." 474 U.S. at 524. It further explained that "the Full Faith and Credit Act requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive effect it would have had in another court of the same State." Id. at 525. In other words, a federal court considering enjoining a state court proceeding, where the state court has ruled on the res judicata issue, must first, as a threshold matter, look to that state's law of judgments to determine whether another court of that state would view the res

judicata ruling as final and binding. If so, then the federal court is bound by that ruling as well.

In this case, we agree with the district court that under Wisconsin law the state court's denial of summary judgment on the res judicata issue would not be regarded as sufficiently "final" to warrant preclusive effect in another Wisconsin court, and it would therefore not warrant the full preclusive effect in federal court demanded by the Full Faith and Credit Act. See Wis. Stat. sec. 808.03(1) ("A final judgment or final order is a judgment, order or disposition that disposes the entire matter in litigation as to one or more of the parties . . . ."); Heaton v. Larsen, 294 N.W.2d 15, 24 (Wis. 1980). Accordingly, the district court was not statutorily barred by the Full Faith and Credit Act--as it intersects with the Anti-Injunction Act--from calling into question the state court's resolution of the res judicata issue.

But just because a federal court has the statutory power to enjoin a state court proceeding does not mean that it should exercise that authority. In other words, that the state court has not reached final judgment on a previously litigated claim is an essential but not necessarily sufficient condition of federal court intervention pursuant to the relitigation exception of the Anti-Injunction Act.

When a federal court is asked to enjoin state court proceedings, the mere fact that the case falls within one of sec. 2283's exceptions does not "qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." Mitchum v. Foster, 407 U.S. 225, 243 (1972). A litigant must still show equitable entitlement to an injunction. See Kerr-McGee Chemical Corp. v. Hartigan, 816 F.2d 1177, 1182 (7th Cir. 1987). Moreover, the Supreme Court has instructed that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of sec. 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." Atlantic Coast Line R.R. Co., 398 U.S. at 297. Assuming that the threshold test of finality mandated by Parsons Steel is satisfied, how far do these principles extend in limiting federal courts' power to intervene once a state court has already adjudicated the merits of the preclusion issue?

Different jurisdictions have adopted competing approaches for cases in which the state court has not yet reached final judgment, but in which the state court has ruled on the res judicata defense. On remand from the Supreme Court and flowing back up from the district court, the Eleventh Circuit considered in the Parsons Steel case whether the Alabama state court's denial of a motion for summary judgment on res judicata grounds bound the federal court considering an injunction. First Alabama Bank of Montgomery v. Parsons Steel, Inc., 825 F.2d 1475 (11th Cir. 1987). The Eleventh Circuit held that, under Alabama law, the denial of summary judgment was not a final adjudication of the preclusion issue, and it went on to hold, therefore, that the district court was not precluded from enjoining the state court proceedings. Id. at 1480-86; see also Battle v. Liberty Nat'l Life Ins. Co., 877 F.2d 877, 882 (11th Cir. 1989) ("Because [a denial of a motion for summary judgment] is not a final order, it would not be given preclusive effect in state court and need not be accorded that deference in federal court.").

In Amalgamated Sugar Co. v. NL Industries, Inc., 825 F.2d 634 (2d Cir. 1987), the Second Circuit held that a district court properly enjoined state court relitigation of a claim by shareholders where a federal court previously entered a judgment in favor of a corporation. In that case, the state court had not yet ruled on the merits of the res judicata defense raised by the corporation, but indicated that it would consider those merits only in the context of a full trial on the underlying claim. The Second Circuit held that the district court could properly enjoin the state court proceedings because the state court had not entered a prior final judgment on the merits, but had merely denied the corporation's summary judgment motion without prejudice. Id. at 642. Under those circumstances, the Second Circuit did not need to confront the scenario before us, where the state court had not reached final judgment but had clearly adjudicated and expressly rejected the merits of the res judicata defense. The Second Circuit did, however, go on to note in dicta that "[the corporation] acted properly in moving for summary judgment on res judicata grounds in the New Jersey court prior to seeking injunctive relief in the district court, thereby attempting to avoid invoking the more intrusive remedy of injunctive relief." Id.

In Kaempfer v. Brown, 684 F.Supp. 319 (D.D.C. 1988), the District of Columbia District Court enjoined the defendants from pursuing a claim in District of Columbia courts where a federal district court's earlier judgment involved identical tort claims. At that time, the District

of Columbia Superior Court had summarily denied the injunctive plaintiff's motion to dismiss on res judicata and other grounds, but the district court "[could not] say with the slightest degree of confidence that the Superior Court [had] decided the issue of res judicata." Id. at 323. The district court interpreted Parsons Steel as holding that the Full Faith and Credit Act bars a federal court from enjoining a state action in order to protect a prior federal judgment once a state court has expressly rejected a preclusion defense. Id.

We believe that a rule that restricts a federal court's discretion to enjoin state court proceedings once the state court expressly and unambiguously decides a res judicata defense, whether or not there has been a final judgment on the entire claim in state court, best reconciles the conflicting concerns identified in Parsons Steel. Any federal injunction to bar purported relitigation balances efficiency advantages of finality against respect for state courts and their decisions. Once a state court considers a res judicata defense and rules that a prior federal judgment does not actually bar a claim, the affront of federal court intervention stripping the state court of power to continue is greatly magnified. After such a ruling, the interests in preventing possible relitigation are therefore generally outweighed by the heightened comity concerns except in the most extraordinary circumstances./1

The standards governing abstention under the Younger doctrine are instructive in this regard, as those standards have evolved in light of heightened comity concerns surrounding federal injunctions of state criminal proceedings and other state proceedings involving important state interests. In Younger v. Harris, 401 U.S. 37 (1971), a plaintiff sought a federal injunction against a state criminal prosecution on the grounds that the prosecution violated federal constitutional rights. The district court ordered injunctive relief and the Supreme Court reversed, concluding that the injunction was "a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." Id. at 41. "[The] underlying reason," the Court explained, "for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions . . . ." Id. at 44; see also Trust & Investment Advisers, Inc. v. Hogsett, 43 F.3d 290, 294-95 (7th Cir. 1994) (explaining that the Younger doctrine "has since been expanded beyond criminal prosecutions to various civil

proceedings in state court implicating important state interests"). To accommodate this interest, the Court held that a litigant in the Younger context must make a "showing of bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." Id. at 54./2

In this case, the district court gave inadequate weight to these heightened comity concerns. Unhappy with the state court's handling of the res judicata defense, AgriBank went to federal court for another look at the issue. Having determined that res judicata should have barred the state court suit, the district court found no comity considerations that weighed against AgriBank's costs and inconvenience of continued state court proceedings. Instead, the district court concluded that the balance of harms and the public's interest in finality weighed in AgriBank's favor after noting only that "[t]he obvious prospect of relitigation suffices to show that defendant will suffer irreparable harm if an injunction does not issue to stop the state court proceeding." The court therefore enjoined further proceedings in state court on the matter, and we regard this as an abuse of discretion. Just as the Younger Court rejected the plaintiff's plea for injunctive relief because the injury he faced was "solely 'that incidental to every criminal proceeding brought lawfully and in good faith,'" 401 U.S. at 49 (citations omitted), here AgriBank sought injunctive relief in the face of further litigation expenses which, though costly, are incidental to defense of every lawsuit. While the expenses and uncertainty of litigation may sometimes be sufficient to warrant an injunction pursuant to sec. 2283 prior to a clear and express state court ruling on the preclusion defense, see, e.g., Harper Plastics, Inc. v. Amoco Chemicals Corp., 657 F.2d 939 (7th Cir. 1981), they are insufficient when weighed against the added, countervailing comity interests that arise after that point.

Under this approach, AgriBank was not stripped of a remedy if it believed that the state court wrongly decided the res judicata issue. If AgriBank had demonstrated extraordinary circumstances it might have been entitled to a federal injunction. As it stands, though, AgriBank would still have an opportunity to appeal the state trial court's decision up through the state appeals process./3 As the Supreme Court went on to explain in Parsons Steel:

Even if the state court mistakenly rejected respondents' claim of res judicata, this does not

justify the highly intrusive remedy of a federal court injunction against the enforcement of the state-court judgment. . . . Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from this Court.

474 U.S. at 525; see also Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 518 (1955) ("The prohibition of sec. 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts."). While a federal injunction of state court proceedings might, in some cases, be cost-effective, "inefficient simultaneous litigation in state and federal courts on the same issue" is "one of the costs of our dual court system." Id. at 524-25.

Conclusion

For the reasons stated herein, we VACATE the decision of the district court granting the injunction and REMAND the case for further proceedings consistent with this opinion.

/1 An express and unambiguous rejection of a res judicata defense would arguably increase the likelihood that further state court proceedings would undermine a prior federal court judgment, and therefore counsel in favor of a federal injunction. However, this concern will almost always be outweighed by the heightened comity interests that arise once the state court has adjudicated this issue and, as explained later in this opinion, is best addressed through state appellate channels.

Drawing a line at the point at which a state court decides the res judicata issue might also arguably create incentives for litigants with a prior, favorable federal court judgment to rush back to federal court for an injunction rather than relying on the res judicata defense in state court at all. Aside from the fact that Parsons Steel already creates incentives to obtain a federal injunction before the state court reaches final judgment, we believe that it is necessary to restrict district court discretion in this way to prevent the relitigation exception of the Anti-Injunction Act from simply being turned into a vehicle for seeking appellate review of a state court decision in federal court. See Atlantic Coast

Line R.R. Co., 398 U.S. at 293.

/2 In considering the types of "unusual circumstances" that satisfy this standard, the Court also noted that "even irreparable injury is insufficient unless it is 'both great and immediate.'" Id. at 46 (citing Fenner v. Boykin, 271 U.S. 240, 243 (1926)).

/3 Although a denial of a motion for summary judgment is not appealable as a final decision, under Wisconsin law a litigant may petition for leave to appeal a non-final order under certain circumstances. See Wis. Stat. sec. 808.03(2).