**CENTENNIAL MANAGEMENT SERVICES, INC., Plaintiff/Counterclaim Defendant,**

v.

**AXA RE VIE, Axa Re Life Insurance Company and Axa Reassurance, Defendants/Third–Party Plaintiffs,**

v.

**Centennial Financial Group, Inc., William E. Vogel, Thomas L. Enstrom, Jardine Group Services Corporation and James A. Irwin, Third–Party Defendants.**

No. 97–2509–JWL.

United States District Court,
D. Kansas.

June 20, 2001.

Kent Sullivan, Robert M. Kroenert, Reggie C. Giffin, Morrison & Hecker, L.L.P., Kansas City, MO, Douglas J. Schmidt, Terrance M. Summers, Blackwell, Sanders, Peper & Martin, LLP, Kansas City, MO, Steven J. Boyd, Badger & Levings, L.C., Kansas City, MO, Daniel M. Dibble, Thomas S. Stewart, Michael J. Abrams, Lathrop & Gage, L.C., Kansas City, MO, for Plaintiff.

Frank Wendt, Michael E. Waldeck, Angela K. Green, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Thomas M. Regan, Christopher B. Kende, Edward Hayum, Cozen and O'Connor, Philadelphia, PA, for Defendant.

Steven D. Ruse, Amy E. Patton, Shughart, Thomson & Kilroy, Overland Park, KS, Deborah E. Lans, Donald H. Chase, Morrison, Cohen, Singer & Weinstein, LLP, New York City, Robert W. Cotter, Patrick M. Reidy, Dysart, Taylor, Lay, Cotter & McMonigle, P.C., Kansas City, MO, for Counter-Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Third-party defendants Jardine Group Services Corporation and James Irwin seek to enjoin a state court proceeding that they contend is threatening their favorable judgment in this court. For the reasons set forth below, the motion is denied.

### Background

Plaintiffs Centennial Life Insurance Company ("CLIC") and Centennial Management Services, Inc. ("CMS"), the sole shareholder of CLIC, filed this action against CLIC's reinsurers, Axa Re Vie, Axa Reassurance, S.A. and Axa Re Life Insurance Company (collectively "Axa") alleging fraudulent misrepresentation and breach of contract in connection with various reinsurance agreements that Axa entered into with CLIC. In essence, CLIC and CMS claimed that Axa forced CLIC into liquidation. Axa, in turn, filed counterclaims against CLIC and CMS for fraudulent misrepresentation, fraudulent omission and breach of contract in connection with the same reinsurance agreements.[1] According to Axa, CLIC and CMS failed to disclose to Axa material information about CLIC's financial condi-

---

1. Axa, as a third-party plaintiff, filed these same claims against Centennial Financial Group (CFG), William Vogel and Thomas Engstrom. CFG and Mr. Engstrom own CMS; Mr. Vogel owns CFG.

tion during the negotiations for the reinsurance agreements. Axa also filed a third-party complaint against the reinsurance brokers, James Irwin and Jardine Group Services Corporation, alleging fraudulent misrepresentation, fraudulent omission, negligent misrepresentation and breach of contract based on the brokers' purported failure to disclose material information about CLIC to Axa during contract negotiations. Finally, the reinsurance brokers filed a counterclaim against Axa alleging that Axa breached the brokerage agreement between the parties by failing to pay certain commissions to the brokers.

Approximately six months after the suit was filed, the Shawnee County District Court entered an Order of Liquidation placing CLIC under the statutory control of Kathleen Sebelius, Commissioner of the Kansas Insurance Department. Commissioner Sebelius appointed Dan Watkins as Special Deputy Liquidator of CLIC. Thereafter, Ms. Sebelius and Mr. Watkins (the "Liquidators") were substituted as party plaintiffs for CLIC. Near the end of the discovery process and just prior to the final pretrial conference, the Liquidators reached a settlement with Axa. Shortly after that settlement, the Liquidators sought leave from the court to realign the parties to allow the Liquidators to proceed with claims against the CLIC shareholders and Jardine. The court denied the motion in light of the approaching trial date.

The Liquidators then filed suit in Shawnee County District Court against the CLIC shareholders and Jardine (hereinafter the "State Court Litigation"). In the meantime, this case was tried to a jury over the course of four weeks and the jury returned a verdict in favor of Jardine on all claims and issues asserted by Axa. Thereafter, Jardine filed a motion to dismiss the Liquidators' complaint in the State Court Litigation based on *res judica-*

*ta* and collateral estoppel principles. Judge Dowd of the Shawnee County District Court denied that motion. Pursuant to 28 U.S.C. § 2283, Jardine and Mr. Irwin (hereinafter referred to collectively as "Jardine") now move this court to enjoin the Shawnee County District Court from permitting the Liquidators in the State Court Litigation to prosecute their claims and issues against Jardine. According to Jardine, such claims and issues have been fully determined by this court in this action and an injunction is "necessary to protect and effectuate the previous judgments of this court."

*Discussion*

■   Jardine's motion is made pursuant to the Anti Injunction Act, 28 U.S.C. § 2283. The Anti Injunction Act is designed to prevent friction between state and federal courts and to protect state court proceedings from federal interference. *See Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 514–16, 75 S.Ct. 452, 99 L.Ed. 600 (1955). By its own terms, "the Anti Injunction Act is sweeping and provides for only three types of exceptions: 'A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *See Ramsden v. AgriBank, FCB*, 214 F.3d 865, 868 (7th Cir.) (quoting 28 U.S.C. § 2283), *cert. denied,* 531 U.S. 1036, 121 S.Ct. 624, 148 L.Ed.2d 534 (2000). As the Supreme Court has recognized, moreover, the exceptions are narrow ones. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (citing *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)).

■ Jardine's request for an injunction is made under the third exception-the "relitigation exception"-which "allows a party with a favorable federal judgment to protect that judgment by enjoining repetitive state court proceedings instead of relying on a claim or issue preclusion defense." *See Ramsden,* 214 F.3d at 868 (citing *Samuel C. Ennis & Co. v. Woodmar Realty Co.,* 542 F.2d 45, 49 (7th Cir.1976)). As the "relitigation exception bears on the delicate relationship between state and federal courts, strict timing requirements cabin its invocation." *Id.* Specifically, the Supreme Court has held that once a litigant raises a claim preclusion defense and the state court rules on .it, that state court determination binds the federal courts. *See Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 524–25, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). As the Seventh Circuit summarized:

> [The Supreme Court] reached this conclusion after noting that the Full Faith and Credit Act, 28 U.S.C. § 1738, under which a federal court must give the same preclusive effect to a state court judgment that another court of that state would give, embodies Congress' legislative commitment to federalism and comity in the area of judgment recognition. 474 U.S. at 535, 106 S.Ct. 768. The *Parsons Steel* Court went on to hold that "the Anti Injunction Act and the Full Faith and Credit Act can be construed consistently, simply by limiting the relitigation exception of the Anti Injunction Act to those situations in which the state court has not yet ruled on the merits of the *res judicata* issue." 474 U.S. at 524, 106 S.Ct. 768. It further explained that "the Full Faith and Credit Act requires that federal courts give

the state-court judgment, and particularly the state court's resolution of the *res judicata* issue, the same preclusive effect it would have had in another court of the same State." *Id.* at 525, 106 S.Ct. 768. In other words, a federal court considering enjoining a state court proceeding, where the state court has ruled on the *res judicata* issue, must first, as a threshold matter, look to that state's law of judgments to determine whether another court of that state would view the *res judicata* ruling as final and binding. If so, then the federal court is bound by that ruling as well.

*Ramsden,* 214 F.3d at 869 (additional citations omitted).

■ In their papers, the Liquidators argue that Kansas has adopted a relaxed definition of finality for preclusion doctrine purposes and that under this relaxed definition, the state court's denial of Jardine's motion to dismiss is sufficiently "final" to warrant preclusive effect in another Kansas court and, thus, warrants the full preclusive effect in federal court demanded by the Full Faith and Credit Act. This argument is not without merit. *See, e.g., Grimmett v. S & W Auto Sales Co.,* 26 Kan. · App.2d 482, 485–88, 988 P.2d 755 (1999). Jardine, of course, vigorously argues that the state court's decision is not final and, thus, warrants no preclusive effect in federal court. In the end, however, the court need not decide whether the state court's decision is "final" for preclusion doctrine purposes. For even assuming that the state court's decision is not sufficiently "final" to warrant preclusive effect, the court would nonetheless decline to exercise its discretion to enjoin the State Court Litigation.[2]

---

2. As the court noted in *Ramsden,* "just because a federal court has the statutory power to enjoin a state court proceeding does not mean that it should exercise that authority. In other words, that the state court has not

reached final judgment on a previously litigated claim is an essential but not necessarily sufficient condition of federal court intervention pursuant to the relitigation exception of the Anti Injunction Act." 214 F.3d at 869.

In reaching this conclusion, the court is persuaded in large part by the Seventh Circuit's careful and well-reasoned analysis in *Ramsden.* In *Ramsden,* the Seventh Circuit adopted a rule "that restricts a federal court's discretion to enjoin state court proceedings once the state court expressly and unambiguously decides a *res judicata* defense, whether or not there has been a final judgment on the entire claim in state court." 214 F.3d at 870. As the Seventh Circuit emphasized, the rule "best reconciles any conflicting concerns identified in *Parsons Steel*":

> Any federal injunction to bar purported relitigation balances efficiency advantages of finality against respect for state courts and their decisions. Once a state court considers a *res judicata* defense and rules that a prior federal judgment does not actually bar a claim, the affront of federal court intervention stripping the state court of power to continue is greatly magnified. After such a ruling, the interests in preventing possible relitigation are therefore generally outweighed by the heightened comity concerns except in the most extraordinary circumstances.

*Id.* at 870–71. In fashioning such a rule, the Seventh Circuit also emphasized the Supreme Court's instruction that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." *Id.* at 869 (quoting *Atlantic Coast Line R. Co.,* 398 U.S. at 297, 90 S.Ct. 1739).

In short, for the reasons set forth by the Seventh Circuit in *Ramsden,* the court refuses to enjoin the State Court Litigation. Significantly, Judge Dowd, in a written memorandum and order, has expressly and unambiguously rejected Jardine's *res judicata* defense. While Jardine is clearly not happy with Judge Dowd's handling of that defense, this court will not take another look at the issue simply because Jardine faces further litigation expenses and uncertainty. *See id.* at 871 (expenses and uncertainty of further litigation insufficient to warrant an injunction pursuant to § 2283 after a state court's express ruling on the defense when weighed against the added, countervailing comity interests).[3] Under this approach, of course, Jardine is not left without recourse-it can appeal Judge Dowd's decision through the state appeals process. *See Parsons Steel,* 474 U.S. at 525, 106 S.Ct. 768 ("Even if the state court mistakenly rejected respondents' claim of res judicata, this does not justify the highly intrusive remedy of a federal court injunction against the enforcement of the state-court judgment.... Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from this Court.").

For all of the foregoing reasons, Jardine's application for a preliminary and permanent injunction is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Jardine and Mr. Irwin's application for a preliminary and permanent injunction of state court proceedings (*doc. #* 518) is **denied** and the

---

**3.** The Seventh Circuit in *Ramsden* suggested that AgriBank may have been entitled to a federal injunction had it demonstrated "ex- traordinary circumstances." 214 F.3d at 872. No such circumstances are alleged by Jardine in its motion.

Liquidators' motion for leave to file a sur-reply (doc. # 524) is **denied**.

**IT IS SO ORDERED.**