STATE of Wisconsin EX REL. Thomas HASS, Petitioner,†

v.

WISCONSIN COURT OF APPEALS, Mark A. Ramsden, Raelynn Ramsden and Milton R. Ramsden, d/b/a Ramsden Dairy, Respondents.

Supreme Court

*No. 01–0240–W. Oral argument September 14, 2001.—Decided December 4, 2001.*

2001 WI 128

(Also reported in 636 N.W.2d 707.)

† Motion for reconsideration denied 1-28-02.

 

For the petitioner a petition was filed by *Patricia M. Gibeault, Michael J. Modl* and *Axley Brynelson, LLP,* Madison, and oral argument by *Patricia M. Gibeault.*

For the respondent, Wisconsin Court of Appeals, a response was filed by *David C. Rice,* assistant attorney general.

For the respondents, Milton, Mark and Raelynn Ramdsen, a response was filed by *Robert J. Kasieta* and *Kasieta Legal Group, LLC,* Madison, and oral argument by *Robert J. Kasieta.*

¶ 1. WILLIAM A. BABLITCH, J. Petitioner Thomas E. Hass (Hass) seeks an order from this court, pursuant to our constitutional superintending and administrative authority over all lower courts, directing the court of appeals to grant every petition for interlocutory appeal from a circuit court order in which the court denied a motion asserting that a final federal court judgment bars the state court proceeding on issue and claim preclusion grounds. Currently, the court of appeals is afforded discretion in granting such petitions, limited by the criteria for granting review enumerated under Wis. Stat. § 808.03(2)(1999–2000).[1] Hass argues, however, that mandatory review of this and similar petitions is necessary to ensure respect for final federal court judgments, to avoid unnecessary litigation, and to discourage successful federal court litigants from seeking an immediate postjudgment injunction in federal court enjoining the state court from hearing adjudicated issues or claims.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

¶ 2. Although Hass has identified valid policy concerns, we conclude that mandatory review of such interlocutory appeals is not required in this case. We are confident that the court of appeals considers, and will continue to consider, these policy concerns in deciding whether to grant such interlocutory appeals.

I

¶ 3. In this case, it is the procedural history that is of particular importance for our review, not the underlying facts or causes of action. For this reason, our discussion of the facts and claims is limited.

¶ 4. In February 1997, the Ramsdens filed an action in Portage County Circuit Court against AgriBank, Hass, and Farm Credit Services of North Central Wisconsin alleging 13 different claims surrounding the Ramsdens' purchase of a dairy farm from AgriBank. Hass was an employee of AgriBank and was involved in the sale of the property. The Ramsdens' complaint alleged that the property was environmentally contaminated at the time of purchase. The circuit court later dismissed Hass from the action on the ground that, as an agent of AgriBank, he could not be held liable under a negligence theory. The Ramsdens then dismissed their complaint against the remaining defendants without prejudice and appealed Hass's dismissal to the court of appeals.

¶ 5. While the appeal was pending, the Ramsdens filed a second complaint against AgriBank in the St. Croix County Circuit Court. This complaint alleged seven causes of action, including that AgriBank made misrepresentations about the conditions of the farm. AgriBank removed the case to the United States District Court for the Western District of Wisconsin. After

significant discovery was conducted, AgriBank filed a motion for summary judgment, which the court granted. The federal district court concluded that the testimony of the Ramsdens' expert lacked scientific reliability and validity and therefore was not admissible as evidence. Without this testimony, the Ramsdens were left without any way of proving their case through expert testimony, and thus, the court dismissed the Ramsdens' action with prejudice. The Ramsdens appealed this judgment to the Court of Appeals for the Seventh Circuit, but later voluntarily dismissed this appeal in exchange for a waiver by AgriBank of recovery of its costs.

¶ 6. While this federal action was pending, the state court of appeals reversed the Portage County Circuit Court's dismissal of Hass and remanded for further proceedings. *See Ramsden v. Farm Credit Servs.*, 223 Wis. 2d 704, 590 N.W.2d 1 (Ct. App. 1998). On remand, after the federal district court's judgment, Hass moved for summary judgment based on claim and issue preclusion, among other grounds. The motion was denied. The court found that the elements were present for claim preclusion, but concluded that fairness considerations led to the conclusion that the Ramsdens' claims should not be barred. The court also held that issue preclusion would not apply because Wisconsin has a different standard for the admissibility of expert testimony than does the federal court. Hass appealed this decision to the state court of appeals.

¶ 7. AgriBank then filed a motion for injunctive relief in the federal district court asking the court to permanently enjoin the state circuit court from further addressing any issues between the Ramsdens and Hass or AgriBank arising from the purchase of the farm property. The federal district court granted the injunc-

tion. The court held that the injunction was necessary to protect or effectuate the federal court's judgment. *See Ramsden v. AgriBank,* 63 F.Supp. 2d 958, 960 (W.D. Wis. 1999). The Ramsdens appealed, and the Seventh Circuit vacated the district court's injunction.

¶ 8. In reaching its decision, the Seventh Circuit examined the Anti-Injunction Act, 28 U.S.C. § 2283, which generally prohibits federal courts from enjoining state court proceedings. The court noted that "[t]he Act is designed to prevent friction between state and federal courts and to protect state court proceedings from federal interference." *Ramsden v. AgriBank,* 214 F.3d 865, 868 (7th Cir. 2000). However, an exception to the Act—the relitigation exception—allows "a party with a favorable federal judgment to protect that judgment by enjoining repetitive state court proceedings instead of relying on a claim or issue preclusion defense." *Id.* Nevertheless, the court held that a federal court should not interfere with a state court proceeding where the litigants had first sought a decision in the state court on the preclusive effect of the federal court judgment except in the most extraordinary circumstances. *Id.* at 871. The court, however, did not find that such circumstances existed. *Id.* at 872.

¶ 9. After the Seventh Circuit's decision, the state court of appeals denied Hass's petition for interlocutory appeal. Hass then filed a petition for supervisory writ in this court. He seeks an order from this court directing the court of appeals to grant every petition for interlocutory appeal where the issue on appeal is whether a federal court judgment bars a state court proceeding on issue or claim preclusion grounds. The correctness of the circuit court's ruling is not before this court, and therefore, we will not discuss the merits of the circuit court's decision on issue and claim preclusion.

639

## II

¶ 10. The issue presented in this case is whether this court should exercise its constitutional superintending and administrative authority to direct the court of appeals to accept all petitions for interlocutory appeal where the circuit court has denied a claim that the state court action is barred by a final federal court judgment on issue and claim preclusion grounds. We decline to extend our authority to mandate review in such instances. Instead, based in part on concerns of comity between the state and federal courts, we urge the court of appeals to carefully review such future petitions.

¶ 11. Article VII, Section 3(1) of the Wisconsin Constitution provides that "[t]he supreme court shall have superintending and administrative authority over all courts." Under this power, we may control the course of ordinary litigation in the lower courts of Wisconsin. *Arneson v. Jezwinski*, 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996). Our application of this power may be as broad and as flexible as necessary to maintain the administration of justice in the courts of this state; however, we do not use such power lightly. *Id.* at 226. " 'This court will not exercise its superintending power where there is another adequate remedy, by appeal or otherwise, for the conduct of the trial court, or where the conduct of the trial court does not threaten seriously to impose a significant hardship upon a citizen.' " *Id.* (quoting *McEwen v. Pierce County*, 90 Wis. 2d 256, 269–70, 279 N.W.2d 469 (1979)).

¶ 12. The question of whether the court will exercise its superintending authority is one of policy, not power. *In re Phelan,* 225 Wis. 314, 320, 274 N.W. 411 (1937). " 'The inherent power of this court is shaped, not by prior usage, but by the continuing necessity that this court carry out its function as a supreme court.' " *Arneson,* 206 Wis. 2d at 231 (quoting *In re Kading,* 70 Wis. 2d 508, 519, 235 N.W.2d 409 (1975)).

¶ 13. Hass asks that we use our superintending and administrative power to require the court of appeals to accept petitions for interlocutory appeal, like his, involving a nonfinal order that denies granting a motion asserting that the state court proceeding is barred on issue and claim preclusion grounds in light of a final federal court judgment. Such orders are not appealable as of right, but are appealable by permission pursuant to Wis. Stat. § 808.03(2), which states:

> (2) Appeals by permission. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:
>
> (a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;
>
> (b) Protect the petitioner from substantial or irreparable injury; or
>
> (c) Clarify an issue of general importance in the administration of justice.

In reviewing such appeals, the court must also examine whether the defendant has a substantial likelihood of

success on the merits. *State v. Webb,* 160 Wis. 2d 622, 632, 467 N.W.2d 108 (1991).

¶ 14. In *Arneson,* 206 Wis. 2d 217, we exercised our superintending and administrative authority to require the court of appeals to grant petitions for interlocutory appeal in which the circuit court had denied a claim of qualified immunity from an action under 42 U.S.C. § 1983, but only if the denial turned on an issue of law. *Id.* at 219–20. We based our decision on three primary factors. First, we noted that, without mandatory review, a state official would be left with no other adequate remedy on appeal. *Id.* at 226–27. That is, because qualified immunity is immunity from suit, even if the official won on appeal, the official loses the primary benefit of qualified immunity, which is to avoid the burden of litigation. The official cannot be reimmunized on appeal. Second, we noted that a plaintiff may suffer harm if the case proceeds to trial and appeal and it is then determined that the defendant official is not liable for damages because of qualified immunity. *Id.* at 227. In short, the plaintiff may incur the expense and hardship of full trial and appeal. Third and finally, we held that, if mandatory review is not available, society as a whole incurs social costs associated with such litigation. *Id.* These costs included " 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.' " *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 816 (1982)).

¶ 15. After citing these reasons, we determined that such orders denying a claim of qualified immunity should be immediately appealable because they would always meet the criteria enumerated under Wis. Stat. § 808.03(2)(a) and (b). *Id.* at 229. We stated:

> [W]e determine that immediate interlocutory appeal
> will protect state officials from the substantial or ir-
> reparable injury that will result if the suit is errone-
> ously allowed to proceed. In addition, we conclude that
> determination of this issue at the early stages of
> litigation will clarify the proceedings for all parties
> involved, as well as the public, by resolving it "before
> extensive measures are taken to defend the public
> officials."

*Id.* (citations omitted). We also noted that requiring review of such orders was in accordance with a majority of jurisdictions and with *Mitchell v. Forsyth,* 472 U.S. 511 (1985). *Id.* at 229–230.

¶ 16. Indeed, as Hass argues, there are some policy concerns that are implicated by both interlocutory appeals involving a claim of qualified immunity and interlocutory appeals involving preclusive effect of a final federal judgment. Specifically, in both instances, denial of the petition may result in unnecessary litigation if the court of appeals later overturns the circuit court's decision on postjudgment appeal. Further, in both instances, if the petition is denied, the defendant may lose the benefit of the claim. The benefit and underlying purpose of both issue and claim preclusion is ensuring finality (that is, enforcing repose) and foreclosing relitigation. *See Sopha v. Owens-Corning Fiberglas Corp.,* 230 Wis. 2d 212, 235, 601 N.W.2d 627 (1999); *Lindas v. Cady,* 183 Wis. 2d 547, 553–54, 515 N.W.2d 458 (1994). This benefit is lost if the petition for interlocutory appeal is denied and the matter proceeds to trial, even if the circuit court's decision is later reversed on postjudgment appeal.

¶ 17. Despite these similarities, however, key differences exist. To begin with, as we noted in *Arneson,* the failure to grant interlocutory appeals on a claim of

qualified immunity invokes important social costs. Such costs are often absent in interlocutory appeals involving issue and claim preclusion because private litigants, not public officials, are often involved. Thus, costs to society are not presented; only costs associated with the expense and burden of litigation are involved. Indeed, such private litigants often must incur such costs when the court denies an interlocutory appeal of a nonfinal order (for example, motion to dismiss or for summary judgment), even though this nonfinal order may be overturned later on appeal. Such costs, although significant, are less substantial than costs to society. In addition, unlike the interlocutory appeals at issue in *Arneson,* there is no persuasive authority from the United States Supreme Court or any other jurisdiction to support the conclusion that such appeals require mandatory review. For these reasons, our holding in *Arneson* is distinguishable and does not require use of our superintending and administrative authority in this case.

¶ 18. Instead, Hass's case more closely resembles *State v. Jenich,* 94 Wis. 2d 74, 288 N.W.2d 114, *modified per curiam,* 94 Wis. 2d 97a, 292 N.W.2d 348 (1980). In that case, we declined to use our superintending and administrative authority to require the court of appeals to grant every nonfinal order denying a motion to dismiss based on double jeopardy. *Id.* at 97a n.1. Instead, we concluded that the review of such orders was appropriately left to the discretion of the court of appeals pursuant to Wis. Stat. § 808.03(2). *Id.* Despite this conclusion, we nevertheless urged the court of appeals to be careful in exercising that discretion. *Id.* at 97a-97b. We stated that "[g]iven the serious constitutional questions raised by claims of double jeopardy, review of such orders will often be necessary to protect

the accused from 'substantial or irreparable injury,'— one of the three criteria for testing the appropriateness of review under sec. 808.03(2)." *Id.* at 97b.

■

¶ 19. Indeed, claim preclusion is similar to double jeopardy. Both serve to preserve the finality of judgments and to protect defendants from subsequent litigation or prosecution. *See State v. Canon,* 2001 WI 11, ¶ 8, 241 Wis. 2d 164, 622 N.W.2d 270; *Sopha,* 230 Wis. 2d at 233, 235. Issue preclusion has also been regarded as embodied in the constitutional guarantees of double jeopardy. *See Canon,* 2001 WI 11, ¶¶ 11–13; *State v. Vassos,* 218 Wis. 2d 330, 342, 579 N.W.2d 35 (1998). In light of these similarities, we conclude that *Jenich* provides a basis for our decision in this case.

¶ 20. We declined to exercise our superintending and administrative authority in *Jenich.* We did so even though, as in this case, denials of such petitions for interlocutory appeal present concerns of both unnecessary litigation and the loss of any benefit of the claim. Certainly, double jeopardy, because of its basis in the Constitution, presents a more compelling basis for exercising our superintending and administrative authority than issue and claim preclusion. *See* 5 Wayne R. LaFave et al., *Criminal Procedure,* § 25.1(b) (2d ed. 1999) (noting that the Double Jeopardy Clause was established primarily to protect defendants from prosecutorial oppression). Following *Jenich,* we conclude that use of our superintending and administrative authority is not required in this case.

¶ 21. Hass argues, however, that concerns of comity between the state and federal court also support the use of our superintending and administrative authority in this case. Comity is harmed, he contends, because, under the current law, a state court litigant

who prevails in federal court will not seek dismissal of any subsequent state court action on grounds of issue or claim preclusion in the state court. Instead, such litigants will seek an injunction in federal court to enjoin the state court action. Hass argues that the end result will be federal court interference into state court proceedings and such interference will be lessened only if federal courts are assured that the state court of appeals will automatically review any circuit court decision denying preclusive effect to a final federal judgment.

¶ 22. In *Ramsden,* 214 F.3d at 872, the Seventh Circuit determined that the ruling in *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518 (1986), created this potential for conflict between the state and federal courts. The *Ramsden* court noted that, according to *Parsons,* once a litigant raises a claim preclusion defense in state court and the state court rules on it, the federal courts are bound by that determination. *Id.* at 868–69. Thus, in light of the deference that federal courts give to state court rulings on issue and claim preclusion, litigants who obtain a favorable federal court judgment will no longer wait for the state court ruling; instead, they will rush back to federal court for an injunction to prevent the state court ruling. *Id.* at 872.

¶ 23. We recognize that friction between the state and federal courts may occur under such circumstances. However, requiring the court of appeals to review every appeal confronting this issue will not eliminate such friction. Indeed, despite mandatory review, state court litigants who have obtained a favorable final judgment in federal court may still seek a federal court injunction to prevent any state court action. Thus, mandatory review serves comity only to the

extent that it provides an additional determination on the preclusion claim. Therefore, such review would not promote comity to the same extent as the action taken by the court in *Ramsden,* 214 F.3d 865, where the court avoided direct friction between the courts by limiting the federal court's ability to permanently enjoin state court action. Certainly, we recognize that federal court judgments should be given their full effect in state courts. We are confident, however, that our state circuit courts will adequately provide full and fair resolution of such claims of issue and claim preclusion. Litigants may then seek appeal of such nonfinal orders under Wis. Stat. § 808.03(2).

¶ 24. Further, any concerns of comity are outweighed by our concerns of maintaining a proper working relationship between this court and the court of appeals. The parties and the court of appeals have not provided us with determinative information on the potential effects of such mandatory review on the court's docket. However, we are mindful that such automatic grants of interlocutory appeals are generally disfavored because they cause delay in litigation and increase the burden of the court of appeals.

¶ 25. At the same time, however, we are not unmindful of the advantages of granting such petitions for interlocutory appeals. Indeed, if review is granted, unnecessary litigation may be avoided; issues affecting the ultimate determination of the action may be decided early on; and comity may be promoted. In previous cases, *Jenich* in particular, we have urged the court of appeals to be careful in exercising discretion when reviewing these petitions. *See Jenich,* 94 Wis. 2d at 97a-97b; *see also State ex rel. A.E. v. Green Lake County Cir. Ct.,* 94 Wis. 2d 98, 288 N.W.2d 125, *modified per curiam,* 94 Wis. 2d 105d, 292 N.W.2d 114 (1980) (en-

647

couraging the granting of leave to appeal in cases where juvenile court jurisdiction is waived). We have done so while noting that granting such appeals will often be necessary to protect the claimant from substantial or irreparable injury. *See Jenich,* 94 Wis. 2d at 97b (also citing serious constitutional concerns); *State ex rel. A.E.,* 94 Wis. 2d at 105d. As previously stated, we are confident that the court of appeals considers, and will continue to consider, the valid policy concerns raised by Hass in this case in deciding whether to grant such interlocutory appeals.

### III

¶ 26. In sum, Hass's request for an order is denied. Following *Jenich,* we will not exercise our superintending and administrative authority in this case to require the court of appeals to accept all petitions for interlocutory appeal in which the circuit court denied a motion asserting that a final federal judgment bars the state court proceeding based on issue or claim preclusion grounds.

*By the Court.*—The petition for supervisory writ is denied.

¶ 27. DIANE S. SYKES, J. *(dissenting).* I respectfully dissent. I agree with the majority that our superintending authority over the lower courts under Article VII, Section 3(1) of the Wisconsin Constitution is not invoked lightly. *Arneson v. Jezwinski,* 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996). However, considerations of federal-state court comity weigh heavily in favor of its exercise in this instance.

¶ 28. I would direct that the court of appeals grant interlocutory review of all nonfinal circuit court orders declining to give preclusive effect to federal court

judgments. Federalism and the orderly functioning of our dual court system would be best served by this gesture of procedural respect in the state courts for federal court judgments.

¶ 29. As noted by the majority, in *Ramsden v. AgriBank*, 214 F.3d 865 (7th Cir. 2000), the federal court litigation related to this case, the United States Court of Appeals for the Seventh Circuit held that a federal court generally should not issue an injunction against state court proceedings to protect a prior federal court judgment under the Relitigation Exception to the Anti-Injunction Act[1] where a state court has expressly declined to give the federal court judgment preclusive effect. Relying on the United States Supreme Court's decision in *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986), the federal appellate court noted that "[b]ecause the relitigation exception bears on the delicate relationship between state and federal courts, strict timing requirements cabin its invocation." *Ramsden*, 214 F.3d at 868.

¶ 30. The court then considered the federal court's interest in finality and protection of its own judgments against concerns of "comity[] and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Id.* at 869 (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972)). The court concluded that once a state court has explicitly rejected a preclusion defense premised on a prior federal court judgment, "the affront of federal court intervention stripping the state court of power to continue is greatly magnified." *Ramsden*, 214 F.3d at 870. Under these circumstances, the court held, "the interests in preventing possible relitigation [embodied in the Relitigation

---

[1] 28 U.S.C. § 2283 (1999).

Exception to the Anti-Injunction Act] are . . . generally outweighed by the heightened comity concerns except in the most extraordinary circumstances." *Id.* at 871.

¶ 31. The same concerns for federalism and comity animate the question presented in this court. What measure of procedural respect do the state courts owe to federal court judgments? Without commenting on the substantive merits of the preclusion defense in this case, I conclude that federal-state comity and the "delicate relationship between state and federal courts" require that all nonfinal circuit court orders declining to give preclusive effect to federal court judgments be immediately appealable.

¶ 32. As noted by the majority, in *Arneson,* this court held that the court of appeals must always grant interlocutory review of nonfinal circuit court orders denying qualified immunity to government officials. *Arneson,* 206 Wis. 2d at 229. The court concluded that a circuit court order rejecting a qualified immunity defense will always satisfy the first and second statutory criteria for discretionary review, *viz,* that immediate appeal will materially advance the termination of the litigation or clarify further proceedings, or protect the appealing party from substantial or irreparable injury. *Id.;* Wis. Stat. § 808.03(2)(a) and (b). As discussed by the majority, this conclusion was based on the fact that the individual and societal benefits of qualified immunity would largely be lost if immediate appeal were unavailable. *Id.* at 225–227.

¶ 33. The same is true in this context. The private litigant and the public at large share an interest in the finality of judgments, the avoidance of repetitive litigation in different courts (with the possibility of conflicting results), and the prevention of friction between state and federal courts. These interests would be

650

seriously compromised if state court orders declining to give preclusive effect to federal court judgments were not immediately appealable.

¶ 34. The value of a federal court judgment would be substantially diminished if the individual holding that judgment is forced to undergo relitigation in state court before being allowed to appeal an allegedly erroneous rejection of a preclusion defense based upon the federal court judgment. Unnecessary, repetitive litigation may be avoided by immediate interlocutory appeal. For these reasons, circuit court orders declining to give preclusive effect to federal court judgments—like orders denying qualified governmental immunity—will always satisfy the first two statutory criteria for interlocutory appeal.

¶ 35. But the individual judgment-holder's interests are not the only interests at stake. Broader systemic concerns are implicated here. A policy that provides the procedural protection of immediate interlocutory appeal would advance the reciprocal respect owed by state and federal courts to each other's judgments and help avoid conflict between the state and federal judicial systems.

¶ 36. The Seventh Circuit's decision in *Ramsden* was premised on a policy of restraint and sensitivity to considerations of federal-state court comity. It established a rule of non-interference in ongoing state court proceedings—even where the law would otherwise allow an injunction to protect a federal court judgment—in deference to the judgments of the state courts where those courts have expressly ruled on preclusion issues.

¶ 37. Relying again on *Parsons Steel,* the *Ramsden* court said that, absent extraordinary circumstances, "[c]hallenges to the correctness of a state

651

court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system." *Ramsden,* 214 F.3d at 872, quoting *Parsons Steel,* 474 U.S. at 525. The court specifically noted the availability of interlocutory review under Wis. Stat. § 808.03(2) as a means of correcting a mistaken rejection of a preclusion defense based upon a federal court judgment. *Id.* at n.3.

¶ 38. We should demonstrate similar restraint and sensitivity to considerations of federal-state court comity by allowing automatic interlocutory appeal under these circumstances. In declining to do so, the majority cites *State v. Jenich,* 94 Wis. 2d 74, 288 N.W.2d 114, *modified per curiam,* 94 Wis. 2d 97a, 292 N.W.2d 348 (1980), a double jeopardy case. *Jenich,* however, provides little illumination of the issue presented in this case.

¶ 39. The court's original opinion in *Jenich* was split: three members of the court concluded that an order denying a motion to dismiss on double jeopardy grounds was a final order immediately appealable; two members of the court concluded it was a nonfinal order that invariably met the criteria for discretionary review, and, therefore, the court of appeals should always grant review as a matter of course; and two members of the court concluded that it was a nonfinal order subject only to review at the court of appeals' discretion. *Id.* at 81–82.

¶ 40. That opinion was later reconsidered, and the per curiam opinion on reconsideration modified the split opinion and held that a denial of a motion to dismiss on double jeopardy grounds was a nonfinal order subject only to discretionary interlocutory review. *Id.* at 97a-b. The court cautioned, however, that the court of appeals should "be careful in exercising that

discretion" because of the "serious constitutional questions raised by claims of double jeopardy." *Id.*

¶ 41. In a footnote to the per curiam opinion on reconsideration, the court declined, *without explanation,* to invoke its superintending authority to require the court of appeals to hear all permissive appeals from orders rejecting double jeopardy defenses. *Id.* There was no discussion of the matter whatsoever, except in a concurrence to the per curiam opinion. *Id.* at 97d-98 (Abrahamson, J., concurring). As such, *Jenich* provides little analytical support for the majority's conclusion in this case, except perhaps by way of extrapolation from the court's non-discussion of the issue in a footnote.

¶ 42. In my judgment, considerations of federal-state court comity are enough to tip the scales in favor of exercising our constitutional superintending authority to require interlocutory review of nonfinal circuit court orders declining to give preclusive effect to federal court judgments. It does no damage to the relationship between this court and the court of appeals to do so, as there is no evidence that it will cause a significant increase in the court of appeals' docket.

¶ 43. It is, however, detrimental to the relationship between the state and federal courts to deny the procedural protection of interlocutory appeal when a circuit court has declined, perhaps erroneously, to give preclusive effect to a federal court judgment. Accordingly, I respectfully dissent.

¶ 44. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.