SILVERMAN, Circuit Judge,
concurring:
I agree that the Anti-Injunction Act prohibits the injunction that the district court entered in this case. I write separately because I do not believe that we should address the merits of L-P’s res judicata defense. Having elected to assert that defense in the state trial court, L-P cannot come running to federal court to enjoin the state proceedings the moment it gets a verdict that is not to its liking. If L-P is unhappy with the result of its state court trial, it must take that up with the Minnesota appellate courts. It cannot have it both ways — litigate in state court and hope for a win, but obtain a federal injunction of the state proceedings when it loses. To put it another way, what happens in state court stays in state court.
When Lester sued L-P in Minnesota state court, L-P immediately could have moved for an injunction in the district court. Instead, it asserted res judicata in the state court, arguing that the settlement agreement between L-P and a nationwide class of building owners precluded some or all of Lester’s claims. That turned out to be a good decision, at least up until the time that the jury rendered its verdict. Until then, L-P had succeeded in persuading the trial court to issue jury instructions that barred Lester from recovering damages for work it performed for, class members who had already received settlement proceeds, even though the trial court had previously ruled that Minnesota law permitted Lester to assert *854 claims against L-P independent of the building owners’ claims. So far, so good.
Then, things went sour for L-P. The jury awarded $13.2 million for costs to repair buildings that were not covered by the federal class action, and also decided that same amount would compensate Lester for its costs to repair all buildings, including those covered by the class action. In other words, the jury concluded that every repair for which Lester sought damages was performed on a building not covered by the settlement agreement, despite expert testimony that none of Lester’s customers had opted out of the class and that $640,000 had been paid to them from the settlement fund. Unhappy with what it perceived as a double recovery for some class members, L-P ran to district court and sought to enjoin the state court proceedings. At that point, however, it was too late. In my view, once L-P raised its res judicata defense in state court and that court ruled on it, the interests of comity outweighed the district court’s perceived need to prevent possible relitigation of its judgment.
In Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 524-25, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), the Supreme Court held that once a state court rules on the preclusive effect of a prior federal court judgment, a federal court considering enjoining the state court proceedings must first “look to that state’s law of judgments to determine whether another court of that state would view the res judicata ruling as final and binding.” The Court rejected the idea that, notwithstanding the Full Faith and Credit Act, the Anti-Injunction Act “empowers a federal court to be the final adjudicator as to the res judicata effects of its prior judgments on a subsequent state action.” Id. at 522, 106 S.Ct. 768(internal quotation marks omitted). Because of the “important values of federalism and comity embodied in the Full Faith and Credit Act,” the Court limited the relitigation exception to the Anti-Injunction Act to those situations in which the state court has not yet ruled on the merits of the res judicata issue. Id. at 524, 106 S.Ct. 768 (“Once the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable. ... ”).
Ramsden v. AgriBank, 214 F.3d 865 (7th Cir.2000), dealt with a similar issue: the propriety of enjoining state court proceedings where the state court rules that a prior federal judgment does not bar the claim at issue, but state law would not give preclusive effect to that ruling. The Ramsdens sued Agribank and Hass, an employee of Agribank, alleging tortious conduct in the sale of farm property. While the Ramsdens appealed the state court’s dismissal of Hass, they filed a second state court action against Agribank alone, which was removed to federal district court. The district court dismissed the action on the merits. On remand in state court, Hass unsuccessfully moved for summary judgment based on the preclu-sive effect of the federal court ruling. Agribank (whose counsel also represented Hass) then returned to federal court and obtained an injunction that barred the state court from further considering any issues between the parties relating to the purchase.
The Seventh Circuit vacated the injunction. Initially, it noted that, although Wisconsin courts would not consider the state court’s denial of summary judgment as sufficiently final to warrant preclusion, that did not mean the district court was right to invoke the relitigation exception. Id. at 869(“[J]ust because a federal court has the statutory power to enjoin a state court proceeding does not mean that it should exercise that authority.”). Instead, *855 in light of the comity concerns in Parsons Steel, the Seventh Circuit held that:
Once a state court considers a res judi-cata defense and rules that a prior federal judgment does not actually bar a claim, the affront of federal court intervention stripping the state court of power to continue is greatly magnified. After such a ruling, the interests in preventing possible relitigation are therefore generally outweighed by the heightened comity concerns except in the most extraordinary circumstances.
Id. at 870-71. Restricting the district court’s discretion in that manner was necessary to “prevent the relitigation exception from simply being turned into a vehicle for seeking appellate review of a state court decision in federal court.” Id. at 872.
I agree with the reasoning of the Seventh Circuit and would adopt its holding here. In state court, L-P asserted res judicata in its motions for summary judgment, directed verdict and judgment notwithstanding the verdict, and during its case in chief, presented extensive testimony about the settlement agreement and its effect on Lester’s claims. L-P cannot legitimately contend that it did not have a full and fair opportunity to litigate the res judicata issue. Also, there is no question that the trial court squarely addressed the issue multiple times. That should end a federal court’s inquiry.[1] Following Rams-den, we do not have to decide whether LP’s res judicata defense has any merit, in particular the complicated issues of privity and virtual privity. The matter is now in the hands of the Minnesota appellate courts.
It would be tempting to conclude that the jury’s apparent confusion over the district court’s instructions not to award damages for buildings covered by the settlement agreement was an unforeseeable occurrence, entitling L-P to a mulligan in federal court. As Judge Clifton points out, however, L-P will have the opportunity in the Minnesota appellate courts to seek correction of any errors in the verdict. See Ramsden, 214 F.3d at 872(not-ing that defendants “would still have an opportunity to appeal the state trial court’s decision up through the state appeals process”). Having chosen the forum in which to assert res judicata, L-P cannot now abandon the state review process and seek federal court intrusion, even if the jury (or the trial court) got it wrong. See Parsons Steel, 474 U.S. at 525, 106 S.Ct. 768(“Even if the state court mistakenly rejected respondents’ claim of res judicata, this does not justify the highly intrusive remedy of a federal-court injunction against the enforcement of the state-court judgment.”). Indeed, in affirming a district court’s denial of a request to enjoin state court proceedings, we have recognized that “state courts are just as capable as federal courts in applying applicable law.” Merle Norman Cosmetics, Inc. v. Victa, 936 F.2d 466, 468 (9th Cir.1991) (“nothing prevented Merle Norman from raising its defenses of res judicata and collateral estoppel in the California courts”).
I agree with Judge Clifton that the district court abused its discretion in issuing *856 the injunction under the “necessary in aid of jurisdiction” exception to the Anti-Injunction Act. It is worth noting that, aside from its concerns that the trial court’s instructions confused the jury and led to a subclass of class members who “enjoy special treatment not available to other class members” — an issue which, as I explain above, now belongs in the Minnesota appellate courts — the only reason that the district court offered for the injunction was that there was a “substantial risk that others in Lester’s position, encouraged by the jury verdict, will pursue similar claims.” While we typically defer to a district court’s determination that it must act to protect its jurisdiction in a pending class action, see Blalock Eddy Ranch v. MCI Telecomm. Corp., 982 F.2d 371, 375 (9th Cir.1992), I fail to see how the district court’s speculation about future lawsuits complies with the Anti-Injunction Act. See Bechtel Petroleum, Inc. v. Webster, 796 F.2d 252, 253-54 (9th Cir.1986) (requiring “a strong and unequivocal showing” that a federal injunction is necessary).
In fact, the threat of other lawsuits is not extraordinary at all. In any class action culminating in a global settlement agreement, there is always the chance that absent class members will break from the ranks and file separate actions elsewhere, driving up the defendant’s litigation expenses. Of course, res judicata will always be an available defense to such actions, perhaps even warranting a prompt dismissal. As previously noted, when such actions arise a party must decide whether to assert res judicata in the state court or return to federal court and seek an injunction. All we need to hold here is that once the party chooses to litigate its res judica-ta defense in a state forum and that court rules on the issue, the Anti-Injunction Act prevents its relitigation in federal court.

. Referring to the fact that L-P moved for an injunction just before final judgment was entered in state court, Judge Clifton cites to Ramsden and states that “[a]t some point, federal courts must accept that a state court action has progressed too far to warrant intervention, even if a technical prerequisite to final judgment remains.” I believe a state court action reaches that point of no return when the state court rules on the res judicata issue, as the Minnesota trial court did here, regardless of whether a final judgment has been entered.